[Crim. No. 15840. First Dist., Div. Four. Dec. 23, 1977.]

*THE PEOPLE, Plaintiff and Respondent, v.
ARNOLD VAN BROUSSARD, Defendant and Appellant.

[Crim. No. 15892. First Dist., Div. Four. Dec. 23, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
MARJORIE CANNADY, Defendant and Appellant.

*Reporter's Note: The running head was previously entitled "People v. Van Broussard."

## COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Philip A. Schnayerson, Philip M. Brooks and Ezra Hendon, Deputy State Public Defenders, and Ronald D. MacGregor, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAGAN, J.*—**The district attorney filed an information charging both defendants with the attempted murder of Reginald Morris. Defendant Broussard was also charged with a violation of Penal Code section 12021.

Defendants appeal from judgments following jury verdicts finding them guilty of attempted involuntary manslaughter, as a lesser included offense within the offense of attempted murder.

### STATEMENT OF THE FACTS

Morris testified that he saw Broussard in front of a liquor store. Broussard, who had a gun at his side, asked Morris if he wanted to "carry it on." Understanding this to mean the continuation of a fight which the two had about a week before, Morris told him no, that as far as he was concerned, the matter was forgotten. Broussard then left.

A few hours later, Morris started to enter a night club but withdrew when he noticed defendants inside. Broussard came out and followed him down the street, approaching him in front of the same liquor store, again carrying a gun. Morris was asking him to put the gun away when defendant Cannady came up behind Broussard, who handed the gun to her. Morris then eased away at which time Broussard evidently got the gun back from Cannady, and then shot Morris once in his left side.

*Assigned by the Chairperson of the Judicial Council.

Defendant Broussard gave a different version of the incident. He testified that Morris approached both defendants in front of the liquor store and began arguing with Cannady. Broussard told Cannady that they should leave and that there was no need to keep up the argument. He attempted two or three times to retreat and pull Cannady away from the scene, but Morris kept advancing. When Cannady began gesticulating with the gun in her hand, Broussard grabbed her by the arm to spin her around. As he hit her hand, the gun discharged and Morris was shot.

A police officer testified that he heard a gunshot and observed four people. He then saw Broussard extend his right arm in from his body, heard another shot and saw someone clutching his side and falling. He could not tell, however, whether or not Broussard had a gun in his hand. After the incident, the officer found a gun in the gutter.

■ The instructions presented to the jury included all the standard CALJIC instructions relating to attempted murder and manslaughter. CALJIC No. 17.10 was modified by the trial court to include attempted voluntary manslaughter and attempted involuntary manslaughter as lesser included offenses to that of attempted murder, which had been charged in the information.

During their deliberations the jury asked for another explanation of the attempted homicide instructions. The judge again told them that attempted voluntary and attempted involuntary manslaughter were lesser included offenses which should be explored in the event they found appellants not guilty of attempted murder.

The jury found both defendants guilty of attempted involuntary manslaughter and found Broussard not guilty of possessing a firearm in violation of section 12021.

DISCUSSION

*Does the Law Recognize a Crime of*
*Attempted Involuntary Manslaughter?*

■ We must first determine whether the law recognizes a crime of attempted involuntary manslaughter, a question which has not been specifically answered in this state.

To establish an attempt to commit a crime, two essential elements must be present: (1) a specific intent to commit that crime, and (2) a direct act done towards its commission. (*People* v. *Miller* (1935) 2 Cal.2d 527, 530 [42 P.2d 308]; *People* v. *Gallardo* (1953) 41 Cal.2d 57, 66 [257 P.2d 29].)

"Manslaughter" is defined by the Penal Code as the unlawful killing of a human being without malice. (Pen. Code, § 192.) The code prescribes two ways in which the crime of "involuntary manslaughter" may be committed (excluding vehicular manslaughter): (a) "in the commission of an unlawful act, not amounting to felony," or (b) "in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. . . ." (Pen. Code, § 192, subd. 2.) Involuntary manslaughter is thus inherently an unintentional killing. (CALJIC No. 8.45; *People* v. *Germany* (1974) 42 Cal.App.3d 414, 419 [116 Cal.Rptr. 841]; Perkins on Criminal Law (1969) ch. 2, p. 70.)

An "attempt" to commit involuntary manslaughter would require that the defendant intend to perpetrate an unintentional killing—a logical impossibility. This conclusion is supported by the commentators: "One does not attempt to commit a crime by negligently endangering the person or property of another however great the danger or extreme the negligence." (Perkins, *op. cit.*, ch. 6, pp. 573-574.) "[T]here can be no attempt to commit involuntary manslaughter. The consequence involved in that crime is the death of the victim and an act done with intent to achieve this, if an attempt at all, is attempted murder. It is of the essence of involuntary manslaughter that the consequence be produced either recklessly or negligently, but not intentionally." (Smith, *Two Problems in Criminal Attempts* (1957) 70 Harv.L.Rev. 422, 434.) Other jurisdictions that have squarely addressed the issue hold that there can be no such crime. (*Stevens* v. *State* (1892) 91 Tenn. 726 [20 S.W. 423], reaffirmed in *Hull* v. *State* (Tenn.App. 1977) 553 S.W.2d 90, 94; *People* v. *Brown* (1964) 21 App.Div.2d 738 [249 N.Y.S.2d 922, 923].)

We conclude that attempted involuntary manslaughter is inherently contradictory and hence not a recognizable crime in California. Appellants' convictions must be reversed.

### Did Such a Purported Conviction Impliedly
### Acquit Defendants of Attempted Murder and
### Attempted Voluntary Manslaughter?

We find that the jury's verdict, notwithstanding the fact that it convicted appellants of a nonexistent offense, operated as an implied acquittal of the greater offenses of attempted murder and attempted voluntary manslaughter, and that therefore appellants may not be retried for these offenses.

*In re Hess* (1955) 45 Cal.2d 171 [288 P.2d 5] presented a similar situation. Petitioner had been convicted by a jury of contributing to the delinquency of a minor as a lesser included offense within the charged offense of forcible rape. The court found that the uncharged crime of contributing to the delinquency of a minor was not necessarily included within the offense of forcible rape and reversed the conviction. It then went on to consider the question of whether petitioner could be retried again for forcible rape and held he could not.

"This rule is based on the theory that the jury, by returning a verdict of guilty of the lesser offense returns an implied verdict of not guilty of the greater offense, and that any error affecting the express verdict of guilty does not affect the conclusiveness of the implied verdict of acquittal." (*In re Hess, supra*, at p. 176.) This rationale has been invoked even where defendant is convicted of a nonexistent offense, erroneously thought to be "lesser included" within the offense charged. (*In re James M.* (1973) 9 Cal.3d 517, 520 [108 Cal.Rptr. 89, 510 P.2d 33].) Applying these principles to the case at bar, it is clear that by convicting appellants of "attempted involuntary manslaughter" which was erroneously believed to be a lesser offense included within the crimes of attempted murder and attempted voluntary manslaughter, the jury impliedly found that appellants were not guilty of the latter two offenses. (See *Green* v. *United States* (1957) 355 U.S. 184, 191 [2 L.Ed.2d 199, 206, 78 S.Ct. 221, 61 A.L.R.2d 1119].) Therefore, the jury's implied verdict of acquittal is a bar to further prosecution on these charges.

### Can the Defendants Be Brought to Trial
### Again on Some Other Offense Arising Out
### of the Same Incident?

The People contend that appellants may still be retried for any offense of which they were not impliedly acquitted, for example, assault

with a deadly weapon, while appellants maintain that the district attorney's failure to join such charges in the information precludes further prosecution for any offense arising from the same act.

*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206], clearly and succinctly answers this question in analyzing applicable Penal Code sections 654 and 954. "[Where] . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." In *People* v. *Tatem* (1976) 62 Cal.App.3d 655 [133 Cal.Rptr. 265], defendant was charged with burglary and convicted by the trial court of petty theft, which it erroneously believed to be a lesser included offense. After reversing the conviction because petty theft was not necessarily included within the crime of burglary and holding that under *Hess,* the attempted conviction constituted acquittal on the burglary charges, the court declared that future prosecution for petty theft based upon the same incidents was barred by the *Kellett* rule. The same considerations apply herein. The district attorney's failure to join any such offenses in the information operates as an absolute bar to further prosecution.

Also, Penal Code section 1023,[1] and the proscription against double jeopardy precludes further prosecution of either appellant for any lesser included offense. In the ordinary situation where a defendant obtains reversal on appeal of his conviction, the reversal does not bar retrial for the same offense because jeopardy continues as to the offense of which he was convicted. (*United States* v. *Ball* (1896) 163 U.S. 662 [41 L.Ed. 300, 16 S.Ct. 1192].) In the present case, however, retrial of appellants for the offense of which they were convicted is impossible as no such crime exists. Yet there can be no question that appellants have already been put once in jeopardy for the crime of attempted murder. We must therefore conclude that under the plain terms of section 1023, appellants may not now be prosecuted for a lesser included offense therein.

---

[1]"When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

The judgments are reversed with directions to the trial court to dismiss the action.

Rattigan, Acting P. J., and Christian, J., concurred.