[No. D010261. Fourth Dist. Div. One. July 16, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL BRITO, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III and VI.

318

## COUNSEL

Gary Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WORK, J.**—Michael Brito appeals a judgment of convictions of robbery (Pen. Code,[2] § 211), attempted murder, with a finding of premeditation and deliberation (§§ 664, 187, subd. (a)), and assault with a firearm (§ 245, subd. (a)(2)). He asserts the court erred by (1) failing to instruct on attempted involuntary manslaughter as a lesser included offense; (2) refusing to instruct on attempted voluntary manslaughter; (3) failing to give CALJIC No. 8.73 instructing that provocation may show lack of deliberation and

---

[2]All statutory references are to the Penal Code unless otherwise specified.

premeditation; and (4) failing to instruct on the lesser included offense of grand theft. He also claims there was insufficient evidence to support the attempted homicide findings of premeditation and deliberation; the evidence was insufficient to prove robbery; and reversal is required because of prosecutorial misconduct during closing argument. We reject each contention he makes and affirm the judgment.

## Factual Background

Eugene Smith offered a ride to Brito who was hitchhiking on a freeway onramp with a gasoline can in his hand. When Smith opened the passenger door, Brito leaned into the vehicle, pointed a gun toward Smith's face, and demanded gold and money. Motorists in vehicles behind Smith's were unable to pass and began honking their horns. Brito looked back and, when Smith fled through the driver's door, Brito shot him in the back. Brito then drove away in Smith's car which was later found stripped.

Brito's defense was mistaken identity and alibi.

## I

## Nonrecognizable Crime of Attempted Involuntary Manslaughter

In *People v. Broussard* (1977) 76 Cal.App.3d 193, 197 [142 Cal.Rptr. 664], the Court of Appeal concluded attempted involuntary manslaughter is not a recognizable crime. Pointing out that an attempt to commit a crime requires a specific intent to commit that crime and involuntary manslaughter is inherently an unintentional killing, the court reasoned that attempted involuntary manslaughter is logically impossible since an attempt to commit the crime would require the defendant to intend to perpetrate an unintentional killing.

An attempt is defined as requiring the specific intent to commit a crime. (*People v. Camodeca* (1959) 52 Cal.2d 142, 145 [338 P.2d 903]; *People v. Miller* (1935) 2 Cal.2d 527, 530, 533 [42 P.2d 308, 98 A.L.R. 913]; § 21a.[3]) Defining the parameters of the law of attempt, our Supreme Court has explained that "[o]ne of the purposes of criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he

---

[3]Section 21a, added to the Penal Code in 1986, states: "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."

committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime." (*People* v. *Camodeca, supra,* 52 Cal.2d at p. 147.) ▮▮▮▮ California courts have consistently held that there are no crimes of attempted felony murder, attempted murder based on implied malice,[4] and attempted involuntary manslaughter, since all of these crimes by definition do not require the defendant have the specific intent to kill. (*People* v. *Ramos* (1982) 30 Cal.3d 553, 583 [180 Cal.Rptr. 266, 639 P.2d 908], revd. on other grounds in *California* v. *Ramos* (1983) 463 U.S. 992 [77 L.Ed.2d 1171, 103 S.Ct. 3446]; *People* v. *Patterson* (1989) 209 Cal.App.3d 610, 614 [257 Cal.Rptr. 407]; *People* v. *Broussard, supra,* 76 Cal.App.3d at p. 197; contrast *People* v. *Van Ronk* (1985) 171 Cal.App.3d 818, 824-825 [217 Cal.Rptr. 581] [attempted voluntary manslaughter is legally possible since defendant can intend to kill but with mitigating circumstances].)

Brito argues that for crimes such as involuntary manslaughter, criminal negligence substitutes for specific intent to kill. Thus, he asserts a defendant who acts with gross negligence and commits an act the probable result of which could, but did not, cause death has committed attempted involuntary manslaughter. Absent such a crime, he characterizes as absurd the situation that a person who acts with gross negligence resulting in the death of another may be found guilty of involuntary manslaughter on the mere fortuity that the victim died, whereas if the victim lives the defendant must be convicted of attempted murder or of no attempted homicide at all.

Brito's argument is misplaced under the facts of his case, since the jury's verdicts establish he shot while committing a felony, not while merely acting with gross negligence, and he could not be found to have been guilty of any attempted homicide less than attempted felony murder. Involuntary manslaughter is committed when a defendant does not intend to kill his victim, but commits an unlawful act not amounting to a felony, or commits a lawful act with gross negligence resulting in the death of another. (§ 192; *Somers* v. *Superior Court* (1973) 32 Cal.App.3d 961, 967 [108 Cal.Rptr. 630].) Felony murder is committed when a defendant commits or attempts to commit inherently dangerous felonies, including robbery, and a death results, even if he did not intend to kill. (§ 189; *People* v. *Ireland* (1969) 70 Cal.2d 522, 538

---

[4]Second degree murder based on implied malice is committed when the defendant does not intend to kill, but engages in conduct which endangers the life of another, and acts deliberately with conscious disregard for life. (*People* v. *Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279].) An essential distinction between second degree murder based on implied malice and involuntary manslaughter based on criminal negligence, is that in the former the defendant subjectively realized the risk to human life created by his conduct, whereas in the latter the defendant's conduct objectively endangered life, but he did not subjectively realize the risk. (See *People* v. *Phillips* (1966) 64 Cal.2d 574, 587 [51 Cal.Rptr. 225, 414 P.2d 353]; *People* v. *Watson, supra,* 30 Cal.3d at p. 296; CALJIC No. 8.51.)

[75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].) Brito did not shoot while committing a nonfelonious unlawful act or a lawful act, but during the course of a robbery for which he was convicted. This conduct is within the parameters of the felony-murder rule, not involuntary manslaughter. Thus, the argument that if his victim had died he could have been guilty of the lesser offense of involuntary manslaughter is incorrect, since under the verdicts returned he would have been guilty of felony murder.

In addition to being inapplicable to the facts of his case, Brito's argument that criminal negligence can substitute for specific intent for an attempt to commit a crime, would logically require that implied malice and commission of a felony also substitute for specific intent, a result we are certain he does not intend to urge.[5]

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . .

---

[5]Although we need not reach the issue, we note that even for a defendant who committed a nonfelonious act with criminal negligence, the unavailability of a lesser offense of attempted involuntary manslaughter if the victim lives does not lead to an "absurd" result as suggested by Brito. It is not absurd to acquit a defendant of all homicide offenses when the victim lives and the defendant did not intend to kill him. Involuntary manslaughter culpability is imposed on a person who acts with gross negligence resulting in the death of another, even though the person did not intend to cause the homicide. Such imposition of homicide culpability is justified because of a policy concern that persons control their conduct so as not to endanger human life. However, the fact remains that such a defendant did not intend to kill the victim; and if the victim lives, the policy concern for imposing culpability for homicide notwithstanding lack of intent to kill does not come into operation. Thus, it is not unfair to on the one hand impose homicide culpability for a death notwithstanding lack of intent to kill, while on the other hand refraining from imposing homicide (attempt) culpability for conduct which could have, but did not, cause death in the absence of an intent to kill. (Cf. *People v. Patterson*, *supra*, 209 Cal.App.3d at p. 614 [felony-murder rule is designed to deter persons from killing negligently or accidentally by holding them responsible for killings committed during certain felonies; but felony-murder rule is inapplicable to attempted murder where there is no killing].)

Although the Legislature could make a policy determination to fashion a crime of attempted involuntary manslaughter (i.e., characterizing, as urged by Brito, that the requisite intent for an attempt can be the intent to act with criminal negligence), its failure to do so is based on the significant difference between a victim who lives and a victim who dies.

Further, as we have stated, a defendant who could be guilty of attempted involuntary manslaughter could also logically be guilty of attempted murder based on implied malice.

*See footnote, *ante*, page 316.

# IV

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT DELIBERATION AND PREMEDITATION

█ Brito asserts the evidence is insufficient to establish he deliberated and premeditated prior to committing the attempted murder. █ In reviewing the sufficiency of the evidence, we draw all reasonable inferences in favor of the verdict and view the evidence in the light most favorable to the prosecution, and we uphold the judgment if any rational jury could have found the crime established beyond a reasonable doubt. (*People* v. *Miranda* (1987) 44 Cal.3d 57, 86 [241 Cal.Rptr. 594, 744 P.2d 1127].) █ Our Supreme Court has identified three categories of evidence which might sustain a finding of premeditated murder: (1) facts about a defendant's behavior that show prior planning of the killing; (2) facts about any prior relationship or conduct with the victim from which the jury could infer motive; and (3) facts about the manner of the killing from which the jury could infer the defendant intentionally killed the victim according to a preconceived plan. (*People* v. *Anderson* (1968) 70 Cal.2d 15, 26 [73 Cal.Rptr. 550, 447 P.2d 942].) A verdict will be upheld when there is extremely strong evidence of planning; or evidence of motive in conjunction with either (a) evidence of planning or (b) evidence of a manner of killing showing a preconceived design. (*Id.* at p. 27; *People* v. *Bloyd* (1987) 43 Cal.3d 333, 348 [233 Cal.Rptr. 368, 729 P.2d 802].)

█ Here, there is evidence Brito was motivated to kill the victim because he was fleeing from and refusing to comply with his demands for money and gold. There is evidence of planning in that Brito held the loaded gun pointed toward the victim's face when making his demands, which supports an inference Brito had contemplated in advance the possibility he would have to shoot. (See, e.g., *People* v. *Miranda, supra,* 44 Cal.3d at p. 87 [fact that defendant attempting robbery brought loaded gun into store and shortly thereafter used it to kill unarmed victim suggests defendant considered possibility of murder in advance]; *People* v. *Boyd* (1985) 38 Cal.3d 762, 770 [215 Cal.Rptr. 1, 700 P.2d 782]; *People* v. *Adcox* (1988) 47 Cal.3d 207, 240 [253 Cal.Rptr. 55, 763 P.2d 906].) Finally, the manner of the shooting can support an inference of preconceived design since Brito shot his unarmed victim in the back as he was fleeing, which could suggest he had decided ahead of time he would shoot if the victim did not comply with his demands.

In addition, the existence of a preconceived plan is consistent with Brito's statement to a fellow inmate after his arrest that he had gone "out to rob a mark" and when the mark tried to run, he "blew him away." This statement

to a fellow inmate admits the shooting occurred during a robbery while the victim was fleeing and can support an inference Brito planned to kill if the victim tried to run.

The fact that Brito's formulation of the manner in which he would attempt to kill his victim may have occurred during a matter of seconds as his victim exited the vehicle, does not defeat the substantiality of the evidence in support of deliberation and premeditation.

"The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly, but the express requirement for a concurrence of deliberation and premeditation excludes . . . those homicides . . . which are the result of mere unconsidered or rash impulse hastily executed." (*People* v. *Thomas* [1945] 25 Cal.2d [880] at pp. 900-901 [156 P.2d 7].) Although the evidence here is not overwhelming, we cannot conclude no rational trier of fact could find beyond a reasonable doubt that the shooting was the result of a deliberate plan rather than a " 'rash explosion of violence.' " (*People* v. *Miranda, supra,* 44 Cal.3d at p. 87.) The jury could have found Brito's calculated conduct of pointing a loaded gun at his victim's face as he demanded money and gold, and then shooting the noncomplying victim in the back as he fled, established that before he commenced the robbery he prepared himself to kill if necessary, and upon rapid reflection he decided to kill once the confrontation unfolded contrary to his wishes. Contrary to Brito's argument on appeal, our holding does not imply that every robber who shoots a loaded gun is necessarily guilty of premeditation and deliberation; our analysis is confined to the substantiality of the evidence to support the jury's finding under the particular facts of this case.

V

SUFFICIENCY OF THE EVIDENCE TO SHOW ROBBERY AND FAILURE TO INSTRUCT ON LESSER INCLUDED OFFENSE OF THEFT

Brito asserts the trial court erred in refusing his request to instruct on the lesser included offense of theft. He contends (1) since the victim had fled, the jury could have found he did not take the car by force or fear; and (2) the jury could have found he did not intend to steal the vehicle when he held the gun on his victim, but rather formulated his intent to steal the vehicle only after his victim had fled from the vehicle. Further, he asserts there is insufficient evidence to support robbery since he only demanded money and gold and did not order the victim from the vehicle.

Theft is a lesser included offense of robbery without the additional element of taking by force or fear.[7] (*People* v. *Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613].) ▪ The trial court must give requested instructions on lesser included offenses whenever there is evidence, substantial enough to deserve consideration, to support a finding that not all the elements of the greater offense are present. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Flannel*, *supra*, 25 Cal.3d at pp. 684-685 & fn. 12.)

▪ Robbery's element of a taking by force or fear in the victim's immediate presence, is satisfied if force or fear causes the victim to part with his property, and the victim perceives any overt act connected with the commission of the offense. (See *People* v. *Wolcott* (1983) 34 Cal.3d 92, 100 [192 Cal.Rptr. 748, 665 P.2d 520]; *People* v. *Brown* (1989) 212 Cal.App.3d 1409, 1419 [261 Cal.Rptr. 262].) Here, the force applied by Brito caused his victim to flee and enabled him to take the victim's car. Thus we reject Brito's first argument that the jury could have found the taking of the car was not accomplished by force or fear.

▪ Regarding his second argument, in order to constitute robbery rather than theft, the act of force or intimidation must be motivated by the intent to steal; if the larcenous purpose does not arise until after the force has been used against the victim, there is no joint operation of act and intent necessary to constitute robbery. (*People* v. *Green* (1980) 27 Cal.3d 1, 54 [164 Cal.Rptr. 1, 609 P.2d 468].) ▪ However, the cases applying the requirement of joint operation of intent to steal and application of force or fear are distinguishable from Brito's case. In those cases, the issue was whether the defendants had the intent to steal at the time they committed a crime involving force *other than robbery*, or whether they formulated the intent to steal property as an afterthought after they had applied the force in conjunction with the other crime. (See, e.g., *People* v. *Green*, *supra*, 27 Cal.3d at pp. 53-57 [defendant raped victim and then stole personal belongings]; *People* v. *Ramkeesoon*, *supra*, 39 Cal.3d at pp. 350-351; *Rodriguez* v. *Superior Court* (1984) 159 Cal.App.3d 821, 825-827 [205 Cal.Rptr. 750].)

In contrast here, Brito attempted to commit *a robbery* and during the course of events stole the vehicle. We know of no requirement that a robber's intent to steal must be directed towards items he has identified at

---

[7]Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)

the time he applies the force, as opposed to items he identifies during the same transaction. ▆▆▆▆ A defendant commits only one robbery no matter how many items he steals from a single victim pursuant to a single plan or intent.[8] We see no rationale for limiting the scope of the robbery only to the specific items on which the defendant has focused at the time he initially applies the force. (See, e.g., *People* v. *DeLeon* (1982) 138 Cal.App.3d 602, 607 [188 Cal.Rptr. 63].)

We conclude that since it is clear Brito intended to rob Smith at the time he applied the force, his taking the vehicle when it was vacated by Smith because of his fear constituted the robbery of the vehicle. Since there was no evidence upon which the jury could find him not guilty of robbery, but guilty of grand theft, he was not entitled to the lesser included offense instruction.[9] Finally, as apparent from our analysis above, the robbery conviction is supported by the evidence since Brito applied force with intent to steal, and then stole the vehicle.

---

[8] When a defendant steals multiple items during the course of an indivisible transaction involving a single victim, he commits only one robbery or theft notwithstanding the number of items he steals. (Cf. *People* v. *Richardson* (1978) 83 Cal.App.3d 853, 866 [148 Cal.Rptr. 120], disapproved on other grounds in *People* v. *Saddler* (1979) 24 Cal.3d 671, 682, fn. 8 [156 Cal.Rptr. 871, 597 P.2d 130] [series of takings from same individual is only one theft if pursuant to one intention, impulse, and plan]; *People* v. *Bauer* (1969) 1 Cal.3d 368, 376-378 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] [taking of several items during course of robbery of one victim in one continuous transaction allows only one punishment even if taking of other items also constitutes another crime]; contrast facts showing divisible transaction in *People* v. *Porter* (1987) 194 Cal.App.3d 34, 38 [239 Cal.Rptr. 269] [defendant properly punished for both robbery and kidnapping for purpose of robbery when defendant initially planned to rob contents of wallet and then formulated new plan of kidnapping for purposes of robbing contents of automated teller machine]; contrast also multiple victims/one item *People* v. *Ramos, supra*, 30 Cal.3d at pp. 587-589 [since central element of robbery is force or fear, defendant may be convicted of separate robbery offense for each victim, even if victims are in joint possession of property].) Further, a robbery continues until the defendant has escaped with the stolen goods and has reached a place of temporary safety. (*People* v. *Turner* (1983) 145 Cal.App.3d 658, 681 [193 Cal.Rptr. 614].) Thus, a defendant who applies force with the intent to steal, has committed one robbery notwithstanding the number of items he steals during an indivisible transaction, until he has reached a place of safety. It follows that if he conceives the intent to steal a different item after he has finished applying the force to his victim, he is guilty of robbery, not grand theft of that item.

[9] Although we uphold the trial court's refusal to instruct on the lesser included offense, we note the court's reason appears erroneous, premised on Brito's inconsistent alibi defense. When there is evidence from which the jury could find the lesser included offense was committed, the trial court must instruct on it even if inconsistent with the defense elected by the defendant. (*People* v. *Sedeno, supra*, 10 Cal.3d at p. 717, fn. 7; but see contra *People* v. *Gordon* (1982) 136 Cal.App.3d 519, 530 [186 Cal.Rptr. 373].) We need not evaluate this issue, since we hold the court's ruling was proper, even if premised on erroneous reasoning. (*People* v. *Gilchrist* (1982) 133 Cal.App.3d 38, 44 [183 Cal.Rptr. 709].)

## VI*

### PROSECUTORIAL MISCONDUCT

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Benke, J., concurred.

A petition for a rehearing was denied August 9, 1991, and appellant's petition for review by the Supreme Court was denied October 16, 1991.

*See footnote *ante*, page 316.