[No. B092914. Second Dist., Div. Three. Nov. 13, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE GREEN, Defendant and Appellant.

COUNSEL

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Sanjay T. Kumar and Thomas W. Casparian, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Clarence Green appeals the judgment entered after conviction by jury of kidnapping for sexual purposes, robbery, genital penetration by foreign object, carjacking, and attempted rape. (Pen. Code, §§ 207, subd. (a)/208, subd. (d); 211; 289, subd. (a); 215, subd. (a); 664/261, subd. (a)(2).)[1] The jury found Green personally used a firearm in the commission of each offense within the meaning of section 12022.5, subdivision (a), and that he previously had been convicted of a serious or violent felony within the meaning of section 667, subdivisions (b) through (i). The trial court sentenced Green to a term of 62 years and 8 months in state prison.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Prosecution evidence.*

Viewed in accordance with the usual rule of appellate review (*People* v. *Rayford* (1994) 9 Cal.4th 1, 23 [36 Cal.Rptr.2d 317, 884 P.2d 1369]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 575-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), the evidence established that on July 20, 1994, at approximately 10:45 p.m., Linda O. left her office in Burbank and drove into the security garage of her apartment complex in Van Nuys. As Linda O. was about to get out of the car, two people rushed up to her and one of them put a gun to her head. Linda O. screamed and was told to "shut up and to look the other way." Linda O.'s purse was taken and one of the assailants tried to remove a ring from her finger. When the individual with the gun asked Linda O. the number of the apartment in which she lived, the companion appeared to panic and said "Let's just go." Linda O. had not yet looked at the assailants. The individual with the gun told Linda O. to move into the passenger seat. Linda O. told the man to take whatever he wanted but to leave her there. The individual said something to the effect he was not going to leave her, took the keys and started the car. As the gunman drove, Linda O. offered to get money at an automated teller machine. Linda O. looked at the gunman during this conversation and identified him as Green. Green drove with the gun in his right hand and then parked in a residential area that

---

[1] Subsequent unspecified statutory references are to the Penal Code.

was "somewhat secluded." Thereafter, Linda O. looked at Green several times in order to "get a read on him. I wasn't sure what he was going to do."

Green ordered Linda O. to remove her jacket. Linda O. tried to talk Green out of the assault but he removed her blouse and bra and touched her breasts. Green removed Linda O.'s skirt and stockings and told her to lay down. Green put his fingers inside Linda O.'s vagina numerous times, then removed his clothing and got on top of Linda O. Green attempted to insert his penis into Linda O. but only rubbed back and forth against her vagina until he ejaculated between her legs. Linda O. asked if she could dress and Green said she could. Linda O. used a towel she found inside the car to wipe the semen from herself.

When they both had dressed, Linda O. told Green her husband would call the police if she failed to return home and they were probably looking for her. Linda O. said she had to go to the bathroom in an attempt to get Green to release her. Green came around to the passenger side of the car with the gun in his waistband and ordered Linda O. to urinate in the gutter. Green looked in the backseat and the trunk of the car until he found a small cellophane package he apparently had lost. He put the package on the dashboard in front of him.

Green allowed Linda O. to remove certain items from the car. In the process of doing that, Linda O. found the wedding ring she earlier had removed from her hand and placed on the floorboard of the car, and dropped it in the gutter. Although Green touched Linda O.'s diamond earrings and necklace, he did not take them. He took only her bra and stockings. Before Linda O. walked away, Green offered her a dollar. At this point, Green did not seem concerned that Linda O. had seen him. As soon as Green drove away, Linda O. recovered the ring, ran home and called the police. Linda O. identified Green in a photographic lineup, at a live lineup, and in court.

Los Angeles police officers recovered Linda O.'s vehicle on July 26, 1994, in Pacoima. A forensic fingerprint expert found Green's left middle fingerprint on the trunk and his palm print on the hood of the vehicle.

2. *Defense evidence.*

Green testified in his own defense. He denied he had committed the charged offenses and claimed Linda O. had misidentified him because she had failed to notice a tattoo on his chest. Green claimed his fingerprints may have gotten onto the vehicle in the course of his employment as an auto mechanic. Green admitted he previously had been convicted of aggravated

battery with a shotgun in Louisiana in 1977, and armed robbery in California in 1980.

### 3. *Sentencing.*

The trial court selected the high term of 11 years for kidnapping for sexual purposes which it doubled on account of Green's prior serious or violent felony conviction of armed robbery. The trial court enhanced the 22-year base term with a middle term of 4 years for the personal use of a firearm. The trial court noted there were insufficient factors in aggravation to support the upper term of 10 years requested by the People. Regarding the penetration by foreign object, the trial court noted it had selected the "fully consecutive sentence option" and imposed the high base term of eight years which it doubled to sixteen years. The trial court also imposed a consecutive four-year term for the personal use of a firearm.

For robbery of the purse in count 2, the trial court stated, "this count is independent from the other counts and it stands alone." The trial court imposed one-third the middle term, or one year, which it doubled to two years, plus one-third of the middle term firearm enhancement for an additional one year and four months. As to the count of carjacking, the trial court noted "[t]his was a different event than the robbery contained in count II." The trial court imposed one-third the middle term or one year and eight months, which it doubled for a total of three years and four months. The trial court enhanced the term by one year and four months for the personal use of a firearm.

With respect to the attempted rape, the trial court noted this count was separate from the kidnapping for sexual purposes and the penetration by foreign object and sentenced Green to one-third the middle term or one year which it doubled to two years and enhanced by one year and four months for the personal use of a firearm.

To these terms the trial court added a five-year enhancement for the prior serious felony conviction pursuant to section 667, subdivision (a)(1). The trial court noted the total term imposed was 62 years and 8 months. "It is the court's sentencing choice that all the sentences be served consecutively to each other. This is pursuant to the court's sentencing discretion, the abject terror that you visited on the victim, and the Legislative intent of the [three strikes law]."

The trial court also directed the Department of Corrections to perform an AIDS test on Green and to notify the district attorney of the results so that the victim could be notified.

CONTENTS

Green contends he cannot be convicted of both carjacking and robbery based on the same incident, the trial court erroneously failed to stay the term imposed for robbery, the prior conviction of armed robbery was not determined to be a serious or violent felony on the date it was incurred, the trial court made improper dual use of the prior conviction to double the base term and to impose a five-year enhancement, the trial court improperly relied on the same prior serious or violent felony conviction to double each of the five felony counts of which Green was convicted, the Three Strikes law improperly was enacted as urgency legislation, and the trial court erroneously ordered Green to submit to AIDS testing.

DISCUSSION

1. *Green properly may be convicted and punished for both carjacking and robbery.*

Green contends he cannot be convicted of both carjacking and robbery based on the same incident. (*People* v. *Gamble* (1994) 22 Cal.App.4th 446, 450-452 [27 Cal.Rptr.2d 451]; *People* v. *Rush* (1993) 16 Cal.App.4th 20, 27 [20 Cal.Rptr.2d 15].) In these cases, the defendant was convicted of robbery and grand theft auto. The grand theft auto conviction was reversed because "[a] defendant commits only one robbery no matter how many items he steals from a single victim pursuant to a single plan or intent. [Fn. omitted.]" (*People* v. *Brito* (1991) 232 Cal.App.3d 316, 326 [283 Cal.Rptr. 441].) Green reasons the same result should obtain here and notes the offense of carjacking had not yet been defined at the time the offenses in the cited cases were committed.

Alternatively, Green asserts the trial court erroneously failed to stay the term imposed for robbery pursuant to section 654.[2]

These claims are meritless.

The test in this state of a necessarily included offense is simply that, where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense. (*People* v. *Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].)

Robbery occurs when any type of personal property is removed from the victim by force or fear with the intent to permanently deprive the victim of

[2]Section 654 states, in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

possession of the property. (§ 211.) Carjacking requires the taking of a motor vehicle by force or fear with the intent to temporarily or permanently deprive the victim of possession of the vehicle.[3] Thus, even where the subject of a robbery is a motor vehicle, the intent element of carjacking is less inclusive than the specific intent required for robbery. Accordingly, neither robbery nor carjacking is a lesser offense necessarily included within the other. (*People* v. *Dominguez* (1995) 38 Cal.App.4th 410, 419 [45 Cal.Rptr.2d 153].)

Green's reliance on *Gamble* and *Rush* is misplaced. The same division that decided these cases has concluded that because carjacking is similar to the unlawful taking of a vehicle, it is more appropriate to draw an analogy to robbery/unlawful driving cases than to robbery/grand theft auto cases. (*People* v. *Dominguez, supra*, 38 Cal.App.4th 410, 419.) *Dominguez* reasoned that because carjacking is "an aggravated violation of the unlawful driving and taking of a motor vehicle as defined in Vehicle Code section 10851" (*id.,* at p. 418), and it is well settled that unlawful driving is not included within robbery (*People* v. *Marshall* (1957) 48 Cal.2d 394, 397-399 [309 P.2d 456]; *People* v. *Randle* (1992) 8 Cal.App.4th 1023, 1027-1028 [10 Cal.Rptr.2d 804]; *People* v. *Aho* (1984) 152 Cal.App.3d 658, 664 [199 Cal.Rptr. 671]), it follows that robbery and carjacking are not lesser offenses included within the other.

We agree with this analysis and conclude carjacking is not a lesser offense included within robbery. Thus, Green properly was convicted of both offenses. ■ We next address whether Green may be punished for both offenses.

■ " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611].) However, if the offenses were independent of and not merely incidental to each other, the defendant may be punished separately even though the violations shared common acts or were

---

[3]Section 215 provides: "(a) 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear. [¶] . . . [¶] (c) This section shall not be construed to supersede or affect Section 211. A person may be charged with a violation of this section and Section 211. However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211."

parts of an otherwise indivisible course of conduct. (*People* v. *Hicks* (1993) 6 Cal.4th 784, 789 [25 Cal.Rptr.2d 469, 863 P.2d 714]; *People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].) If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) " 'The defendant's intent and objective are factual questions for the trial court; . . . there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]' [Citation.]" (*People* v. *Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32].)

We review the trial court's findings "in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (*People* v. *Holly* (1976) 62 Cal.App.3d 797, 803 [133 Cal.Rptr. 331].)

Here, Green and his companion initially intended to rob Linda O. They approached her in the garage, placed a gun to her head and took her purse. When Green asked Linda O.'s address, Green's companion, apparently sensing the objective of the attack was about to change, abandoned Green who then, by himself, kidnapped Linda O. and drove her to a secluded area where he forced her to disrobe, repeatedly penetrated her digitally and then attempted to rape her. Only after these sexual offenses had been completed and Green's sexual objectives had been fulfilled did Green take Linda O.'s car by force. Because the carjacking was thus separated in time and place from the initial robbery of Linda O.'s purse and was interrupted by the sexual attack perpetrated by Green, the record contains sufficient evidence to support the trial court's explicit finding the taking of the purse and the taking of the vehicle were separate incidents which merited separate and additional punishment.

Accordingly, Green's claim of error fails.

2. *Serious or violent felony convictions suffered prior to the effective date of section 667, subdivisions (b) through (i), properly qualify as strikes.*

Green contends the trial court improperly sentenced under the Three Strikes law in that his 1980 conviction of armed robbery was not determined to be a serious or violent felony on the date it was incurred. Green relies on the language in section 667, subdivision (d)(1), which states: "The determination of whether a prior conviction is a prior felony conviction for purposes

of subdivisions (b) to (i), inclusive, shall be made upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor." Green argues that under the plain meaning of this language only convictions incurred after March 7, 1994, the effective date of the Three Strikes law, qualify as strikes.

This argument was rejected in *People* v. *Reed* (1995) 33 Cal.App.4th 1608, 1612 [40 Cal.Rptr.2d 47], which held section 667, subdivision (d)(1), "does not require the determination whether a prior conviction is a 'strike' to be made at the time of the prior conviction, but simply by reference to the date of the prior conviction, and thus the Three Strikes law applies to prior felony convictions predating its enactment." (Italics omitted; see also *People* v. *Sipe* (1995) 36 Cal.App.4th 468, 477-478 [42 Cal.Rptr.2d 266]; *People* v. *Anderson* (1995) 35 Cal.App.4th 587, 600-601 [41 Cal.Rptr.2d 474].)

3. *The trial court properly doubled Green's base term and imposed a five-year enhancement based upon the same prior conviction.*

█ Green contends the trial court made improper dual use of the prior conviction to double the base term and to impose a five-year enhancement. He claims that where, as here, doubling of the base term results in an increase of sentence greater than the five-year enhancement for the prior conviction, one, but not both of these increased punishments may apply. Green relies on section 667, subdivision (a)(2),[4] and *People* v. *Jones* (1993) 5 Cal.4th 1142, 1150 [22 Cal.Rptr.2d 753, 857 P.2d 1163]. Green concludes the five-year enhancement for the prior conviction must be stricken.

This claim lacks merit.

Section 667, subdivision (a)(2), does not preclude use of the same prior conviction to double the base term and to enhance the sentence imposed. (*People* v. *Samuels* (1996) 42 Cal.App.4th 1022, 1029 [50 Cal.Rptr.2d 157]; *People* v. *Anderson, supra,* 35 Cal.App.4th at pp. 597-599.) Green's reliance on *People* v. *Jones, supra,* 5 Cal.4th 1142, is misplaced. That case addressed the applicability of enhancements under sections 667, subdivision (a) and 667.5, subdivision (b), arising out of the same underlying felony. Section 667, subdivisions (b) through (i), require doubling of the base term. It therefore is not an enhancement at all. (*People* v. *Sipe, supra,* 36 Cal.App.4th at p. 485; *People* v. *Anderson, supra,* 35 Cal.App.4th at pp. 594-595; *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 570-571 [39 Cal.Rptr.2d 374].)

---

[4]Section 667, subdivision (a)(2), provides, in part: "This subdivision shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment."

### 4. *The trial court properly doubled the base term and the consecutive subordinate terms.*

■ Green contends the trial court improperly relied on the same prior serious or violent felony conviction to double the terms imposed for each of the five felony counts. Green asserts this was error because the plain language of the Three Strikes law does not contemplate such consecutive doubling. Green asserts the word "term" in section 667, subdivision (e)(1), means base term, not base term and all subordinate terms.[5] Green further asserts the doubling of the base term is an enhancement arising from a prior conviction which may be applied only once because it is based on the nature of the offender, not the offense.

This claim is meritless.

*People* v. *Martin* (1995) 32 Cal.App.4th 656 [38 Cal.Rptr.2d 776], held trial courts are required to double the punishment imposed for the subordinate consecutive term in a Three Strikes case. *Martin* noted the doubling of the subordinate consecutive terms is not an enhancement but the prescribed punishment for a crime. (*Id.,* at p. 666.) *Martin* concluded, "Given the existing statutory and regulatory scheme of which the 'Three Strikes' statute is a part, it is reasonable to conclude that if the Legislature had intended to bar doubling the subordinate term, it would have said so by limiting the doubling effect of section 667, subdivision (e)(1) to the 'principal term.' " (*Ibid.*) We agree with this analysis.

Accordingly, the trial court properly doubled the consecutive subordinate terms imposed here.

### 5. *The term imposed by the trial court does not violate section 654.*

■ Green contends section 654 precludes use of the prior conviction to double the base term, double the subordinate consecutive terms and to impose a five-year enhancement for the prior conviction.

This argument is meritless. Section 667, subdivision (e), states: "For the purposes of subdivisions (b) through (i), inclusive, and *in addition to any other enhancement or punishment provisions which may apply,* the following shall apply where a defendant has a prior felony conviction: [¶] (1) If a

---

[5]Section 667, subdivision (e)(1), provides that where a defendant has suffered a prior serious or violent felony conviction, "the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."

defendant has one prior felony conviction that has been pled and proved, the determinate term . . . shall be twice the term otherwise provided as punishment for the current felony conviction." (Italics added.) This provision indicates the Three Strikes law applies even where other enhancements or punishment provisions also apply. Green's claim of improper dual use is therefore refuted by the words of the statute. (*People* v. *Turner* (1995) 40 Cal.App.4th 733, 740-742 [47 Cal.Rptr.2d 42]; *People* v. *Anderson, supra,* 35 Cal.App.4th at p. 593; *People* v. *Ramirez, supra,* 33 Cal.App.4th at p. 566.)

Further, application of the Three Strikes law merely increases the punishment imposed for Green's criminal conduct based on a prior conviction that existed at the time of the offenses. Thus, the prohibition against multiple punishment in section 654 does not apply. (*People* v. *Anderson, supra,* 35 Cal.App.4th at pp. 599-600.) Moreover, because section 667, subdivision (e), constitutes an express exception to the prohibition against multiple punishment, section 654 is inapplicable. (*People* v. *Ramirez, supra,* 33 Cal.App.4th at pp. 572-573.)

6. *The Three Strikes law properly was enacted as urgency legislation.*

■ Green contends the Three Strikes law changed the duties of judges and prosecutors to such an extent it could not properly be enacted as urgency legislation, and thus was not in effect at the time the offense in this case was committed. Green relies on article IV, section 8, subdivision (d) of the California Constitution, which provides: "An urgency statute may not create or abolish any office or change the salary, term, or duties of any office, . . ."

This claim is meritless.

"An addition or subtraction in relation to the volume of the duties required to be performed by an officer, which does not substantially affect the primary duties of his office, is not such a change of duties as would prevent immediate effectiveness of legislation properly declared to be urgent." (*Martin* v. *Riley* (1942) 20 Cal.2d 28, 37 [123 P.2d 488].)

The Three Strikes law does not change the primary duties of the offices of trial judge or prosecutor. Their discretion in sentencing or prosecuting defendants never has been absolute. (See, e.g., §§ 969, 19.2, 1203.06, 1385, subd. (b).) Since the restrictions on the duties of judges and prosecutors in the Three Strikes law are not substantially different from those already imposed, they do not constitute a change in duties so as to preclude

enactment of the statute by urgency legislation. (*People* v. *Kinsey* (1995) 40 Cal.App.4th 1621, 1629 [47 Cal.Rptr.2d 769]; *People* v. *Spears* (1995) 40 Cal.App.4th 1683, 1688-1689 [48 Cal.Rptr.2d 634].)

Thus, the Three Strikes law properly was the subject of urgency legislation.

7. *The matter must be remanded to allow Linda O. or the prosecutor to petition the trial court for AIDS testing of Green.*

After sentencing Green to 62 years and 8 months in state prison, the trial court stated: "The Department of Corrections is ordered to perform an A.I.D.S. test on you and notify the district attorney of the result so the victim may be notified." It appears the trial court relied on section 1202.1 in making this order.

■ Green contends section 1202.1 does not apply in this case and the trial court's order for AIDS testing must be reversed.

It appears this contention is well taken. However, because the prosecutor or Linda O. may have relied on the trial court's improper order for AIDS testing of Green under section 1202.1, the matter must be remanded to allow the prosecutor or Linda O. to seek AIDS testing of Green under Health and Safety Code section 121055.[6] Because the procedure outlined in Health and Safety Code section 121055 is designed to protect the *victim's* privacy (see *People* v. *Guardado* (1995) 40 Cal.App.4th 757, 764 [47 Cal.Rptr.2d 81]), the trial court's order cannot be affirmed without remand. By following this process, rather than concluding the order properly could have been made pursuant to Health and Safety Code section 121055, we ensure that Linda O. has no objection to disclosure of the results of Green's AIDS test to third parties.[7]

The People concede the trial court's existing order that Green be tested for AIDS must be upheld, if at all, under section 1202.1. That section provides,

---

[6]Health and Safety Code section 121055 provides, in part: "Any defendant charged in any criminal complaint . . . with any violation of Penal Code [Section] 261 . . . shall be subject to an order of a court having jurisdiction of the complaint . . . requiring testing as provided in this chapter. [¶] If an alleged victim listed in the complaint . . . makes a written request for testing under this section, the prosecuting attorney, or the alleged victim may petition the court for an order authorized under this section. [¶] The court shall promptly conduct a hearing upon any such petition. If the court finds that probable cause exists to believe that a possible transfer of blood, saliva, semen, or other bodily fluid took place between the defendant . . . and the alleged victim in an act specified in this section, the court shall order that the defendant . . . provide two specimens of blood for [AIDS] testing as provided in this chapter."

[7]If the Department of Corrections already has complied with the trial court's order, the matter is moot as to this case. However, because this is an issue which is capable of recurring and evading resolution, we address its merits.

in relevant part: "Notwithstanding [former] Sections 199.20 and 199.22 of the Health and Safety Code [currently sections 120975 and 120980 prohibiting involuntary AIDS testing], the court shall order every person who is convicted of . . . a sexual offense listed in subdivision (e), . . . to submit to a blood test for evidence of antibodies to the probable causative agent of acquired immune deficiency syndrome (AIDS)." (§ 1202.1, subd. (a).)

Section 1202.1, subdivision (e), defines " 'sexual offense' " in part as follows: "For purposes of this section, 'sexual offense' includes any of the following: [¶] (1) Rape in violation of Section 261. [¶] (2) Unlawful intercourse with a female under age 18 in violation of Section 261.5. [¶] (3) Rape of a spouse in violation of Section 262. [¶] (4) Sodomy in violation of Section 286. [¶] (5) Oral copulation in violation of Section 288a. [¶] (6) Lewd or lascivious acts with a child in violation of Section 288, if the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim."[8]

Green was not convicted of any of the offenses contained in section 1202.1, subdivision (e). The People argue the section should be construed liberally to include Green's conviction of attempted rape. This suggestion expressly was rejected in *People* v. *Jillie* (1992) 8 Cal.App.4th 960 [11 Cal.Rptr.2d 107]. *Jillie* held, "Had the Legislature meant to include attempts among the covered offenses, it could easily have done so as it has done in other instances, for example, Penal Code section 667.5, subdivision (c)(12) specifying attempted murder as one of several violent felonies, and Penal Code section 1192.7, subdivision (c)(27) making an attempt to commit any of the specifically listed felonies also a serious felony. Since the statute is clear and unambiguous, it is not necessary to resort to extrinsic aids for construction. [Citation.] [Fn. omitted.]" (*Id.*, at p. 963.)

Thereafter in 1995, the Legislature amended section 1202.1 to add subdivision (e)(6), which permits testing of a defendant convicted of lewd or lascivious conduct if there is probable cause to believe an exchange of bodily fluids between the defendant and the victim has occurred. Because the Legislature is presumed to know existing case law, its failure to alter judicial interpretation of section 1202.1 when it amended the section in 1995 indicates an intent to leave the law as it stood in the aspects not amended. (*People* v. *Superior Court* (*Lavi*) 4 Cal.4th 1164, 1178-1179, fn. 9 [17 Cal.Rptr.2d 815, 847 P.2d 1031]; *People* v. *Olsen* (1984) 36 Cal.3d 638, 647, fn. 19 [205 Cal.Rptr. 492, 685 P.2d 52]; *Estate of Banerjee* (1978) 21 Cal.3d

---

[8]Subdivision (e)(6), was added to section 1202.1 by Statutes 1995, chapter 396, section 1.

527, 537 [147 Cal.Rptr. 157, 580 P.2d 657]; *People* v. *Allen* (1993) 20 Cal.App.4th 846, 852 [25 Cal.Rptr.2d 26].) Under this well-settled rule of statutory construction, the Legislature's failure in 1995 to add attempts to section 1202.1 indicates agreement with *Jillie*'s interpretation of the law. It follows that the liberal construction of section 1202.1 urged by the People is untenable. Because Green was convicted only of attempted rape, an offense which is not included within section 1202.1, the testing order in this case cannot be upheld under that section.

However, because the trial court made an order for AIDS testing of Green, there was no reason for the prosecutor or Linda O. to petition the trial court for an order requiring Green to be tested for AIDS under Health and Safety Code section 121055. Thus, the record demonstrates an inferred reliance on the trial court's testing order. In such a circumstance, fairness requires the matter be remanded to allow the prosecutor and/or Linda O. to petition for a testing order under Health and Safety Code section 121055. Linda O.'s right to test Green for AIDS should not be impaired merely because the trial court's initial order for such a test cannot be upheld under section 1202.1.[9]

In reaching this conclusion we note *People* v. *Guardado, supra,* 40 Cal.App.4th 757, refused to remand a case under similar circumstances where there was no evidence the victim had requested AIDS testing of the defendant at the trial court level, and where the trial court's original testing order was based on the prosecutor's insufficient assertion there may have been acts other than those shown by the trial evidence which involved the exchange of bodily fluids between the defendant and the victim. *Guardado* is distinguishable because the facts adduced at trial here demonstrate probable cause to believe there may have been an exchange of bodily fluids between Green and Linda O.

In sum, the matter must be remanded.

### Disposition

The order requiring Green to submit to testing for AIDS antibodies is reversed. The matter is remanded to the trial court to allow the prosecutor and/or Linda O. to petition the trial court for an order requiring Green to be

---

[9]Although Health and Safety Code section 121055, like section 1202.1, does not specifically include attempts, its reference to "any violation" of section 261 and the requirement of a hearing to determine whether a possible transfer of bodily fluids took place, renders it sufficiently broad to encompass an order requiring AIDS testing of Green in this case.

tested for AIDS under Health and Safety Code section 121055. In all other respects the judgment is affirmed.

Kitching, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 26, 1997.