[Crim. No. 12868.  Second Dist., Div. One.  Aug. 30, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. STERLING HALL, Defendant and Appellant.

William F. Ritner, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of three counts of armed robbery.

In an information filed in Los Angeles on February 15, 1966, appellant, with Clifton M. Adamson and Charles H. Thompson, was jointly charged in count I with robbing Thomas Johnson of certain jewels of the value of $13,150 on

January 4, 1966, and it was charged that at the time of the commission of the offense the defendants were armed with a deadly weapon, namely, an automatic pistol. In count II the same defendants were charged with robbing Jessie Goodlow of a purse containing items of value in excess of $200 under the same circumstances, and on the same date as related in count I. In count III the same defendants were charged with robbing David M. Collins of a billfold, man's watch and $25 in money under the same circumstances, and at the same time as above related in count I. It was further charged that appellant was previously convicted of robbery in July 1959, in the County of Los Angeles. Appellant was found guilty of first degree robbery as to each count and it was further found that at the time of the commission of the offenses appellant was armed. Appellant filed a timely notice of appeal.

Appellant concedes that the evidence is sufficient to sustain his convictions on counts I and II (robbery of Thomas Johnson and Jessie Goodlow) but contends that as to count III (robbery of David Collins) the evidence is insufficient because it does not reveal his intent permanently to deprive Collins of his property. This contention is without merit.

The testimony of the prosecution witnesses discloses that on January 4, 1966, Thomas Johnson resided at 4514 South Van Ness Street, Los Angeles, with his sister Jessie Mae Goodlow. When Jessie arrived at the residence around 6:15 p.m. on that date she found a man standing on the porch who said he was waiting for someone inside. She knocked and when her brother opened the door, the stranger pushed Jessie inside. Once inside he brandished a gun and forced Jessie, her brother, and their visiting neighbor, David Collins, to lie down on the floor. About that time the intruder was joined by another, shorter man and he then told Thomas Johnson, "B.B. has paid me to kill you, . . . You're dead." He went on to say that he had to kill all of them.

Jessie, who had seen the man on the front porch, later identified him both by voice and appearance in a police line-up. Although at the time of the robbery he was wearing a sheer stocking over his face, she was able to see through it and she identified him, in part, by a mole slightly above his upper right lip. Moreover, the intruder talked the whole time he was in the house, and all three robbery victims easily recognized and identified him by his voice.

After forcing his victims to lie down, Sterling Hall removed Johnson's wallet from his pocket, found that it contained no

money, and then discovered and removed $215 from Johnson's front pocket. Appellant once again threatened to kill the group, but Johnson offered to give him all of the money in the house if he would refrain from so doing. Appellant agreed that if there was enough money he would let them go and he allowed Johnson to get up from the floor. When Johnson arose he saw a tall man wearing a pillowcase over his head and holding a gun. He disclosed his safe to the intruders. Thereafter appellant took Johnson to his bedroom, covered his head with a bedspread, placed his gun against Johnson's temple and said that he would give him a chance, but that if he ever heard about "this again" Johnson wouldn't have another chance. He then bound Johnson's hands and feet and both criminals left.

When their tormentors departed, Jessie discovered that her billfold and some money had been taken from her purse. Two guns were missing from Johnson's bedroom. Cash and valuables were missing from the safe including a watch worth $795, a ring worth about $1,600, a box containing Jessie's Bible and about $600 in cash, and approximately $8,000 in large bills. The latter sum included forty-six $100 bills, six to eight $50 bills, about $2,000 in $20 bills, $300 or $400 in $10 bills and a $500 bill which had been torn in half but taped together again.

The next day Richard D. Nelson, sales manager at Cotter Motors in Long Beach, was visited by appellant and Thompson; he sold each a Cadillac convertible. Appellant made a substantial cash down-payment using a $500 bill which was torn and taped together and about ten $100 bills; Thompson's down-payment consisted mostly of hundreds. Nelson also identified the missing ring which appellant was wearing at the time. Two days later Adamson accompanied appellant and Thompson to Cotter Motors and purchased a Cadillac with a down-payment of $2,000 in $100 bills.

When police officers arrested Thompson and searched his apartment on January 21, they discovered the two guns and a Bible. That same day appellant was arrested at a drive-in and taken to the police station in a police car; the officer who transported him later discovered the stolen ring under the rear seat of the police car.

David Collins, who was present at the Johnson residence on the day of the robbery, confirmed the testimony of Johnson and his sister, Jessie. While Collins lay on the floor with his head covered someone took his wallet, which contained no

money, out of his left, rear pocket. A hand was then run into his side pocket, which contained $40 in a money clip, but when he got up he found his money clip still containing the bills underneath him. Collins, who testified that he saw the stockings on appellant's hand when he entered the house, presumed that because of the stocking on his hand appellant did not distinguish the bills in the money clip. Although he stated that the clip could not have dropped out of his pocket by itself, it is self-evident that Collins was not permanently deprived of either money or property.

Both defendants denied participation in the robbery and produced alibis to indicate that they were elsewhere at the time. Adamson stated that he purchased his Cadillac with racetrack winnings of some $4,700 and appellant testified that he had won $1,400 by gambling with Thomas Johnson, who then also pawned his ring with appellant. ▇▇▇ Obviously, the jury rejected appellant's defense and the only question on this appeal is whether, as a matter of law, the evidence was sufficient to find him guilty of the armed robbery of David Collins.

▇▇▇ Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear. (Pen. Code, § 211; *People* v. *Borra,* 123 Cal.App. 482, 484 [11 P.2d 403].) While a specific intent to steal such property is a necessary element of the crime of robbery, this intent need not be directly proved but may be inferred from all of the circumstances of the case. (*People* v. *Jennings,* 158 Cal.App.2d 159, 165-166 [322 P.2d 19]; *People* v. *Gilbert,* 214 Cal.App.2d 566, 567 [29 Cal.Rptr. 640].) ▇▇▇ In the instant case the evidence discloses, and appellant does not contest the fact, that appellant and his companion robbed Johnson and his sister by taking money from pocket, purse, and safe. Although Collins was not permanently deprived of property, he was present and treated in the same manner as the victims during the commission of these robberies. The jury could reasonably infer from the fact that appellant searched Collins and his wallet, that he possessed the requisite intent to deprive Collins permanently of any valuable property he might thus discover. The fact that the wallet was returned, or later discovered abandoned by Collins, does not absolve appellant of any element essential to support his conviction of robbery. (*People* v. *Smith,* 223 Cal.App.2d 431, 433 [36 Cal.Rptr. 165]; *People* v. *Salcido,* 186 Cal.App.2d 684, 687 [9

Cal.Rptr. 57]; *People* v. *Navarro,* 212 Cal.App.2d 299, 304 [27 Cal.Rptr. 716]; *People* v. *Strauss,* 75 Cal.App. 447, 455-456 [243 P. 67].) The fact that Collins' wallet was empty of money does not mitigate appellant's obvious guilty intent. (*People* v. *Quinn,* 77 Cal.App.2d 734 [176 P.2d 404].) Apparently the robbers were unaware of or overlooked the bills in the money clip because the stockings wound on their hands prevented them from identifying the items. In any event, the circumstances surrounding the removal of Collins' wallet and the search of his person, occurring within the time and during the period of commission of the conceded robberies of Johnson and his sister unequivocally disclose appellant's guilty intent to rob Collins as well.

Appellant gives passing consideration to his deprivation of counsel at the time of the police lineup as potentially constituting an impairment of his constitutional rights, but he resolves the issue by conceding that the "current state of the law" renders this procedure acceptable. (*People* v. *Gilbert,* 63 Cal.2d 690, 709 [47 Cal.Rptr. 909, 408 P.2d 365]; cert. granted 6/13/66, 384 U.S. 985 [16 L.Ed.2d 1003, 86 S.Ct. 1902].) We note that should appellant today be deprived of counsel in his appearance at a police lineup, this would constitute an infringement of his constitutional rights. *United States* v. *Wade* (June 12, 1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California* (June 12, 1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].) We are not required to reverse appellant's conviction, however, since the application of these decisions is prospective only from June 12, 1967. (*Stovall* v. *Denno* (June 12, 1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.