[Crim. No. 42560. Second Dist., Div. Five. Dec. 24, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE STEVEN DELEON et al., Defendants and Appellants.

[black bar redaction]

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Harvey R. Zall, Deputy State Public Defender, and Michael Ward for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—By trial appellants Jose Steven DeLeon and Xavier Octavio Morales were convicted of robbery (count I, Pen. Code, § 211), grand theft (count II, Pen. Code, § 487), taking a vehicle (count III, Veh. Code, § 10851), and assault with a deadly weapon (count IV, Pen. Code, § 245). As to counts I, II, and III, the jury also found that appellants each personally used a deadly weapon (Pen. Code, § 12022, subd. (b)). As to counts I and II, the jury also found that appellants took property, the loss of which exceeded $25,000 (Pen. Code, § 12022.6, subd. (a)). Appellant Morales was sentenced on count I to a term of five years in the state prison, composed of a midterm of three years for robbery, plus one year each for enhancements under sections 12022, subdivision (b), and 12022.6, subdivision (a). Appellant DeLeon was sentenced on count I to a term of four years in the state prison, composed of a lower term of two years for robbery plus one year each for the two enhancements. The court's disposition of the remaining counts is discussed below.

At about 6:15 p.m. on May 26, 1980, the victim, Alfred Alexander, was driving his red 1973 Cadillac proceeding southbound on South 7th Street in Modesto. He was a dealer in gold and silver coins, and was on his way to the Modesto Furniture Auction where he was to meet a man who was interested in some silver coins.

At the intersection of South 7th and Pecos, a white 1968 Chevrolet, failing to stop for the stop sign on Pecos, pulled in front of him, and Mr. Alexander had to brake in order to avoid hitting the Chevrolet. The Chevrolet proceeded at about 20 miles per hour but when Mr. Alexander tried to pass it, the Chevrolet veered into his car. Mr. Alexander pulled off the road and the Chevrolet parked behind him. Appellant DeLeon was the driver of the Chevrolet; appellant Morales was the front passenger, and a juvenile, Ralph G., was a rear passenger.

Mr. Alexander got out and stood at the rear of his car. DeLeon got out of the Chevrolet and met Mr. Alexander there. DeLeon accused Alexander of nearly hitting his car, and Alexander replied it was DeLeon who nearly hit him. DeLeon then kicked a dent in Mr. Alexander's car and said, "Fuck your car." Appellant Morales got out of the Chevrolet, armed with pruning shears. He approached Mr. Alexander, threatening to castrate him, kill him, and cut him open with the pruning shears. Morales opened the shears, attacked, and came within two inches of Mr. Alexander's lower belly. Mr. Alexander backed off but Morales kept coming. Meanwhile, DeLeon went to the trunk of the Chevrolet and removed a crowbar. DeLeon told Morales to take Mr. Alexander's car. When Mr. Alexander ran back toward his car to prevent that, DeLeon attacked him with the crowbar, attempting to strike his head, and hitting Mr. Alexander's arm and shoulder. Morales got in Mr. Alexander's car and drove it away. DeLeon and Ralph G. got back in the Chevrolet and also drove off.

Noting the license number of the Chevrolet, Mr. Alexander ran 250 yards to the Modesto Furniture Auction where a report was made to the police. About an hour later, Mr. Alexander's car was found less than a mile away. Mr. Alexander's attache case which had been in the car was missing. It had contained numerous silver and gold coins and diamonds. In addition, a camera was missing from the dash of the car and the CB radio had been ripped out. The stereo radio and tape player were damaged and six tapes were missing. The total loss was $37,781.

Seventeen-year-old Ralph G. testified for the prosecution. He had been through juvenile court proceedings based on this incident and testified under a grant of further immunity. He corroborated the attacks on Mr. Alexander by Morales with the pruning shears and DeLeon with the crowbar. Morales drove away in Mr. Alexander's car and DeLeon and Ralph followed in the Chevrolet. They picked up Morales, who took a briefcase from Mr. Alexander's car and brought it into the Chevrolet. Morales opened the briefcase with the crowbar and found it contained many old coins. Morales and DeLeon took off with the money. Ralph took Mr. Alexander's car to the location where it was eventually recovered.

Morales' fingerprints were found on Mr. Alexander's car. Through the reported license number, the Chevrolet was traced to an address where DeLeon was observed to exercise control over it, and he identified himself as its owner. Mr. Alexander positively identified appellants at trial.

Appellants presented alibi defenses.

## Robbery and Penal Code Section 12022.6

Appellants make various contentions but their main attack is upon the conviction of robbery in count I with findings as to that count that the loss exceeded $25,000 under section 12022.6. Appellants argue that there was no robbery of the car because the evidence is insufficient to show that they intended to deprive the owner permanently of the car. They also argue that there was no robbery of the coins, and that section 12022.6 could not properly apply to the robbery count, because the evidence is insufficient to show that appellants knew of the existence and value of the coins at the time they used force to take the car. We find no merit to these arguments.

First, contrary to appellants' contentions, the robbery count may be sustained on the theory that the subject of the robbery was the car. The fact that the car was subsequently abandoned does not compel the conclusion that appellants intended to deprive the owner of the car only temporarily. Appellants' intent was to be inferred from circumstances and was a question of fact for the jury to decide. (*People* v. *Hall* (1967) 253 Cal.App.2d 1051, 1054 [61 Cal.Rptr. 676].) The jury might reasonably conclude, for example, that appellants intended to deprive the owner permanently of the car, but after discovering the valuable coins inside appellants concluded that they had better abandon the car as quickly as possible because the police would not treat this as a routine car theft. Giving all reasonable inferences in favor of the judgment, substantial evidence supports a conviction of robbery for taking the car by force.

Penal Code section 12022.6 was properly applicable to the robbery count based upon this theory of robbery of the car. It provides, "Any person who takes, damages or destroys any property in the commission or attempted commission of a felony, with the intent to cause such taking, damage or destruction, and the loss exceeds: [¶] (a) Twenty-five thousand dollars ($25,000), [the sentence shall be enhanced by an additional term of one year]. . . ."

Quite simply, appellants intentionally took the car, and the victim's loss as a result of that incident was more than $25,000. The statute requires an intentional taking, but that element was satisfied by taking the car. The statute by its terms draws a distinction between the taking and the loss. It does not by its terms require the taking of $25,000, it requires an intentional taking, damage or destruction of property in the commission of any felony, "and the loss exceeds" $25,000.

Although it is possible to conceive of a statute which would punish a defendant only to the extent of the value which he reasonably believed he was taking (see Model Pen. Code (Official Draft 1980) § 223.1, com. 3(c), pp. 144-147

(1980)), section 12022.6 is not so worded, and the use of the term "the loss" is consistent with the traditional rule holding the criminal strictly liable for the higher amount actually taken (Perkins, Criminal Law (2d ed. 1959) § 7, p. 817), whether temporarily or permanently. (See *People* v. *Kellett* (1982) 134 Cal.App.3d 949, 959 [185 Cal.Rptr. 1]; *People* v. *Bates* (1980) 113 Cal. App.3d 481, 483-484 [169 Cal.Rptr. 853]; *People* v. *Ramirez* (1980) 109 Cal. App.3d 529, 539-540 [167 Cal.Rptr. 174].)

■ The conviction of robbery on count I is also sustainable as a robbery of the coins, based on the theory that when appellants took the car by force they intended to deprive the owner permanently of whatever contents of the car appellants found to be of value. A gunman who demands the victim's wallet and shortly thereafter removes the contents and throws away the wallet is not absolved of robbery merely because he did not keep the container. (*People* v. *Hall, supra,* 253 Cal.App.2d at p. 1054.) The jury's permissible inference that appellants intended all along to steal the contents of the automobile is also supported by the evidence that appellants took the CB radio, stereo tapes and the camera from the dashboard, the types of loot which appellants may reasonably have expected to obtain by taking the car.

■ Of course, on this theory of robbery, section 12022.6 is clearly applicable. Appellants had the good fortune of finding valuable loot in the car.[1] Having been caught, they must now pay the piper. As indicated above, section 12022.6 is not worded so as to relieve robbers from the consequences of their conduct when the loss exceeds their original expectations.[2]

### INSTRUCTIONS ON CIRCUMSTANTIAL EVIDENCE

■ Appellant Morales contends the court erred in failing to instruct the jury *sua sponte* on the sufficiency of circumstantial evidence to prove specific intent. (CALJIC No. 2.02.) He contends that because appellants' intent to deprive the owner permanently of either the car or the coins was an inference to be drawn from the circumstances, instruction in the language of CALJIC No. 2.02 was required. This contention is erroneous because where, as here, there is *direct* evidence of forcible taking of property, the prosecution case is not substantially based on circumstantial evidence. This is simply not the type of situation which requires the court to instruct on circumstantial evidence. (*People* v. *Wiley* (1976) 18 Cal.3d 162, 174-175 [133 Cal.Rptr. 135, 554 P.2d 881]; *People* v. *Malbrough* (1961) 55 Cal.2d 249, 250-251 [10 Cal.Rptr. 632, 359 P.2d 30]; *People* v. *Morrisson* (1979) 92 Cal.App.3d 787, 792-793 [155

---

[1]The coins and gems have never been returned or found.

[2]In light of our conclusions about section 12022.6, DeLeon's contention that his trial counsel was ineffective because he displayed ignorance of the law in discussing the point with the trial court is without merit.

Cal.Rptr. 152].) In any event, the court in this case went further than required by *Wiley* and did instruct the jury in the language of CALJIC No. 2.01,[3] (*People* v. *Yrigoyen* (1955) 45 Cal.2d 46, 50 [286 P.2d 1]; *People* v. *Bender* (1945) 27 Cal.2d 164, 175 [163 P.2d 8]), rendering harmless any failure to give CALJIC No. 2.02. (*People* v. *Bender, supra,* at p. 177; *People* v. *Watson* (1956) 46 Cal.2d 818, 831-832 [299 P.2d 243].)[4]

## INCLUDED OFFENSES

After the verdicts were returned and at the time of sentencing, the trial court concluded that, assuming the validity of the conviction of robbery on count I with enhancements for use of a deadly weapon and for a taking in which the loss exceeded $25,000, then under the circumstances counts II (grand theft), III (taking a vehicle), and IV (assault with a deadly weapon), were necessarily included offenses of count I. After discussion with counsel as to whether those counts should be dismissed or sentence stayed, the court sentenced appellants on count I and the enhancements relating to count I, and made the following disposition of the other counts: "IT IS FURTHER ORDERED that as to Counts II, III, and IV, imposition of sentence is stayed pending appeal on Count I, or judgment as to said Count becoming final, thereafter said Counts to be Dismissed. [¶] The Court further finds that Counts II, III, and IV, are not alternative crimes, and are lesser and included offenses under Count I."

Appellant DeLeon contends that the court should have instructed the jury on the circumstances under which counts II, III, and IV would be considered necessarily included offenses, and should have told the jury that multiple verdicts of guilt as to both the greater and the lesser offenses were not permissible. However, appellants suffer no prejudice because, the jury having been satisfied beyond a reasonable doubt of appellants' guilt of all the offenses, the appropriate corrections can be made by the trial court and reviewing court. (See

---

[3]The court instructed the jury, "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶] . . . . [¶] Also, if the circumstantial evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt. [¶] If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

[4]Note that here we do not cite *Watson* for its landmark general definition of harmless error, but for its specific holding of harmless error in connection with instruction on circumstantial evidence.

*People* v. *Tideman* (1962) 57 Cal.2d 574, 582 [21 Cal.Rptr. 207, 370 P.2d 1007].)[5]

We need not get involved in discussion about the technical wording of the trial court's dismissal order. We can understand the court's concern to preserve the convictions on counts II, III, and IV in case of an appellate reversal on count I or related enhancements or an appellate determination that counts II, III, or IV are not lesser included offenses. However, here the People concede that under the circumstances counts II, III, and IV are lesser included offenses which should be set aside.[6] Since we are upholding count I and related enhancements, the trial court's concern is satisfied, and an appropriate procedure is for us now to reverse the convictions on counts II, III, and IV. (*People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Greene* (1973) 34 Cal.App.3d 622, 654 [110 Cal.Rptr. 160]; *People* v. *Toliver* (1969) 270 Cal.App.2d 492, 498 [75 Cal.Rptr. 819].)

The judgments as to count I are affirmed. The judgments as to counts II, III, and IV are reversed.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied January 21, 1983, and the petition of appellant Morales for a hearing by the Supreme Court was denied March 2, 1983. Bird, C. J., was of the opinion that the petition should be granted.

---

[5]Thus DeLeon's additional contention that his counsel gave ineffective assistance to the court in drafting appropriate instructions to the jury about included offenses, is moot.

[6]This makes it unnecessary to discuss whether counts II, III, and IV are necessarily included offenses and also renders moot appellants' contentions as to counts II, III, and IV.