Filed 9/20/16  P. v. Taylor CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DELTON LYNN TAYLOR,<br><br>    Defendant and Appellant. | 2d Crim. No. B269126<br>(Super. Ct. No. 2013017031)<br>(Ventura County) |

Delton Lynn Taylor appeals from the judgment entered after a jury had convicted him of kidnapping to commit robbery.  (Pen. Code, § 209, subd. (b)(1).)  The offense was committed 33 years before his conviction.  His identity as the perpetrator was discovered through a "cold hit" DNA match.  Appellant was sentenced to prison for life with the possibility of parole.

Appellant contends that the trial court erroneously admitted other crimes evidence and that the evidence is insufficient to show that, when the kidnapping began, he had the specific intent to commit robbery.  We affirm.

*Facts Relating to the Charged Offense*

In February 1982 Carmen D. was putting groceries into her parked car.  Appellant approached her and asked "for spare change for a phone call."  Carmen D. leaned inside the car to get her purse.  Appellant pushed her into the front passenger seat,

held a knife against her throat, and took her car keys. Appellant got into the driver's seat and drove to a school. It was about 6:30 p.m.

Appellant parked the car, grabbed Carmen D. by the hair, and forced her head into his crotch area. Appellant demanded that she "perform oral sex." Carmen D. said she would "bite it off."

Appellant punched Carmen D. in the jaw. She "just saw stars." Appellant pushed her and demanded that she remove her pants. Carmen D. removed her pants and underwear. Appellant made her "get on all fours" on the front passenger seat. Her head was facing "out the window." Appellant, who was behind Carmen D., put his penis into her vagina.

After ejaculating, appellant "took a towel from the back [seat] and wiped [Carmen D.'s] vagina down." He then opened the passenger door and pushed her out of the car. She ran, and appellant drove the car in her direction. She "had to jump out of the way" to avoid being hit by the vehicle. Appellant drove away with Carmen D.'s purse inside the car. The car was later found "just around the corner from [Carmen D.'s] house."

Immediately after the rape, swabs were collected from Carmen D.'s vaginal fourchette, which "is at the very bottom of the vaginal opening going towards the anus." Thirty-one years later, in 2013, a forensic scientist obtained a DNA profile from sperm on the swabs. She submitted the profile to the Combined DNA Index System (CODIS). "CODIS is a national database that contains various DNA profiles from individuals." CODIS found a match between the submitted DNA profile and appellant's DNA profile. When a detective contacted appellant, he denied any involvement in the 1982 sexual assault.

Another forensic scientist subsequently analyzed appellant's DNA profile and the DNA profile obtained from sperm in Carmen D.'s vaginal fourchette. The forensic scientist opined that the two profiles are identical. She testified that this particular "DNA profile . . . occurs in randomly selected, unrelated people at a frequency

2

of approximately one in 1.3 sextillion African-Americans, one in 3.6 septillion Caucasians, and one in 16 septillion Hispanics."

*Facts Relating to the Uncharged Offenses*

Karen P., the victim of the uncharged offenses, testified as follows: In September 1984 at approximately 3:00 p.m., she was working in the library at an elementary school. Appellant walked into the library, hit her in the face, and knocked her to the floor. While Karen P. was on the floor, appellant hit and kicked her. She was badly bruised. She assumed that appellant had attacked her with a pencil because she "had pencil le[a]d in [her] arm." When appellant picked up Karen P.'s desk chair and appeared about to use it as a weapon, she said, "'I give up.'" Appellant put down the chair.

Karen P. was lying on her back. Appellant took off her pants and panties, turned her over onto her stomach, and "put [her] on [her] hands and knees." He put his hands on her hips, inserted his penis into her vagina, and ejaculated. Appellant picked up Karen P.'s panties and used them to "clean[] [her] off."

Appellant demanded Karen P.'s purse. She lied to him about its location, so he was unable to find it. When appellant turned around, Karen P. "opened [a] door and ran like heck." Her watch was missing, and she never recovered it.

The parties stipulated that appellant "is the person [who] committed the crimes against Karen [P.]" and that for these crimes he had been convicted of rape, burglary of the second degree, one count of assault with a deadly weapon (a chair), a second count of assault with a deadly weapon (a pencil), robbery, and sexual battery.

*The Trial Court Did Not Abuse Its Discretion in*

*Admitting Evidence of the Rape of Carmen D.*

Although the evidence shows that appellant raped Carmen D., he was charged only with kidnapping to commit robbery because the statute of limitations for rape had expired. Since appellant was not charged with a sexual offense, he contends that the trial court abused its discretion in admitting evidence of the rape committed against Carmen D.

At a pretrial hearing, defense counsel expressed concern that appellant was "going to be on trial for rape . . . which is more inflammatory than . . . a robbery, which is what he's actually on trial for." Counsel moved "to exclude all evidence of and references to any rape of the complaining witness." (Bold omitted.)

The court responded: "I don't see how you can separate it all. . . . [I]t's all part of the transaction." "[S]ince it's the DNA that got [appellant] here, . . . I don't know how you can possibly pull that out of the rest of the case."

The trial court did not abuse its discretion. The rape and kidnapping to commit robbery were inextricably intertwined. The rape evidence was essential to prove appellant's identity, which was established by DNA extracted from sperm in Carmen D.'s vaginal fourchette. During closing argument, the prosecutor stated, "The semen inside her from the rape proves [appellant's] identity."

Moreover, the rape evidence was essential to prove appellant's defense that he had kidnapped Carmen D. not for the purpose of committing robbery, but for the purpose of committing rape, a crime for which he was not charged. During closing argument, defense counsel told the jury: "Rape is not an afterthought. Mr. Taylor [appellant] is a rapist. For a rapist like Mr. Taylor, rape wakes you up in the morning. Rape puts on your pants. Rape walks you to the kitchen to get the knife you're going to use later. Rape is all consuming." "[I]t was never about the money. It wasn't about the desire to do anything but rape her, and that is terrible. He is guilty of something worse than he is charged with and you have to let that go." "[T]his is a case that is one hundred percent and exclusively motivated by Mr. Taylor's desire to rape Carmen [D]." Because the rape evidence was essential to prove appellant's defense, its admission could not have resulted in a miscarriage of justice. (See Evid. Code, § 353, subd. (b) [judgment shall not be reversed unless erroneous admission of evidence "resulted in a miscarriage of justice"].)

4

*To Prove Appellant's Intent, the Trial Court Did Not Abuse Its*

*Discretion in Admitting Evidence of the Offenses Committed Against Karen P.*

The trial court admitted evidence of the uncharged offenses committed against Karen P. to prove appellant's intent to rob Carmen D. and his identity as the perpetrator of the kidnapping to commit robbery. "Evidence of other crimes is not admissible merely to show criminal propensity, but it may be admitted if relevant to show a material fact such as intent. [Citation.] To be admissible, there must be some degree of similarity between the charged crime and the other crime, but the degree of similarity depends on the purpose for which the evidence was presented. The least degree of similarity is needed when . . . the evidence is offered to prove intent. [Citation.] . . . The determination whether to admit other crimes evidence lies within the trial court's discretion. [Citation.]" (*People v. Jones* (2011) 51 Cal.4th 346, 371.)

The trial court did not abuse its discretion in admitting the other crimes evidence to prove that appellant intended to rob Carmen D. The uncharged and charged crimes were sufficiently similar so that "[e]vidence that [appellant] intended to rob [Karen P.] tended to show that he intended to rob [Carmen D.] . . . ." (*People v. Jones*, *supra*, 51 Cal.4th at p. 371.) Appellant hit both victims in the face. He threatened to use a deadly weapon against both: a knife against Carmen D., a chair against Karen P. He forced both victims down on their hands and knees and raped them from behind. After ejaculating, he cleaned Carmen's D.'s vagina with a towel and Karen P.'s vagina with her panties. He drove away with Carmen D.'s purse inside the vehicle. He demanded that Karen P. give him her purse, and it is reasonable to infer that he stole her watch.

The trial court reasonably concluded that the probative value of the other crimes evidence was not "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice . . . ." (Evid. Code, § 352.) The other crimes evidence was highly probative on the issue of intent. "The evidence was presented quickly, and the parties did not dwell on it." (*People v. Jones*, *supra*, 51 Cal.4th at p. 371.) Karen P.'s testimony consumes only 20 pages of the reporter's transcript.

"The fact that [appellant] was convicted of the [other crimes] reduced any prejudicial effect, as the jury would not be tempted to convict [him] of the charged offense[] in order to punish him for the previous crime[s] . . . ." (*People v. Jones, supra*, 51 Cal.4th at pp. 371-372.) Furthermore, "the attention of the jury was not diverted to a determination whether or not [appellant] had committed the uncharged offenses, because that fact had been determined conclusively by the resulting . . . conviction[s]. [Citation.]" (*People v. Balcom* (1994) 7 Cal.4th 414, 427.)

Finally, "[t]he testimony describing [appellant's] uncharged acts [committed against Karen P.] . . . was no stronger and no more inflammatory than the testimony concerning the charged offense[] [and the inextricably intertwined uncharged rape of Carmen D.]. This circumstance decreased the potential for prejudice, because it was unlikely that the jury disbelieved [Carmen D.'s] testimony regarding the charged offense[] but nevertheless convicted [appellant] on the strength of [Karen P.'s] testimony . . . regarding the uncharged offenses, or that the jury's passions were inflamed by the evidence of [appellant's] uncharged offenses." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405.)

Because the other crimes' evidence was properly admitted to show appellant's intent, we need not decide whether the trial court abused its discretion in also admitting the evidence to show his identity.

*Sufficiency of the Evidence*

To be guilty of kidnapping to commit robbery, the defendant must "have the specific intent to commit a robbery at the time the kidnapping begins. [Citations.]" (*People v. Davis* (2005) 36 Cal.4th 510, 565–566.) Appellant argues that the evidence is insufficient to show that he had the requisite specific intent when the kidnapping of Carmen D. began. Appellant asserts: His "intent at the time of the asportation of [Carmen D.] was to commit a sexual assault upon her, not to rob her. The robbery . . . was an afterthought."

"Robbery is larceny with the aggravating circumstances that 'the property is taken from the person or presence of another' and 'is accomplished by the use of force

6

or by putting the victim in fear of injury.' [Citation.] . . . [¶] . . . The intent required for robbery has been described as the specific intent to deprive the victim of the property permanently. [Citations.] Thus, 'the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal. . . .' [Citation.]" (*People v. Anderson* (2011) 51 Cal.4th 989, 994.)

"The specific intent with which an act is performed is a question of fact. [Citation.] If any substantial evidence supports the trier of fact's finding on this issue, we will not disturb it. [Citations.]" (*In re Albert A*. (1996) 47 Cal.App 4th 1004, 1008.) Substantial evidence is "evidence which is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) In determining whether a finding is supported by substantial evidence, "we '"must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."'" [Citation.]" (*People v. Iniguez* (1994) 7 Cal.4th 847, 854.)

Although appellant abandoned Carmen D.'s car, a reasonable trier of fact could find beyond a reasonable doubt that, when the kidnapping began, he intended to permanently deprive her of the vehicle. He took her car keys, drove to a school, raped her, pushed her out of the car, tried to run her down, and then drove away, leaving her stranded and half-naked. "The fact that the car was subsequently abandoned does not compel the conclusion that appellant[] intended to deprive the owner of the car only temporarily. Appellant[']s intent was to be inferred from circumstances and was a question of fact for the jury to decide. [Citation.] The jury might reasonably conclude, for example, that appellant[] intended to deprive the owner permanently of the car, but [later] . . . concluded that [he] had better abandon the car as quickly as possible because the police would not treat this as a routine car theft." (*People v. Deleon* (1982) 138 Cal.App.3d 602, 606; see also *In re Albert A*., *supra*, 47 Cal.App.4th at p. 1008 ["Even the return of property previously taken does not compel the conclusion that a defendant intended only to temporarily deprive the owner of the property"]; *People v. Kranhouse*

(1968) 265 Cal.App.2d 440, 450 ["The fact that the property, or some of it, was returned is no defense to the charge of grand theft"].)

A reasonable trier of fact could also find beyond a reasonable doubt that, when appellant kidnapped Carmen D., he intended to steal her purse. "[N]o matter what property [appellant] intended to forcibly take from [Carmen D.] when he kidnapped her, he still committed a kidnapping for robbery." (*People v. Davis*, *supra*, 36 Cal.4th at p. 566, fn. omitted.) It is reasonable to infer that appellant knew Carmen D. had a purse before the kidnapping began. She testified that she had seen appellant when she "put [a] chicken in the back seat and then . . . was reaching over and putting [her] purse in the other seat." When appellant asked for spare change, Carmen D. leaned inside the car to get her purse.

Appellant's intent to steal Carmen D.'s purse is supported by the uncharged offenses committed against Karen P. It is reasonable to infer that, when appellant entered the library where Karen P. was working, he intended not only to rape her but also to steal her purse. Immediately after the rape, he demanded her purse. It is similarly reasonable to infer that, when appellant pushed Carmen D. into the car and took her car keys, he intended not only to rape her but to steal her purse as well. Unlike Karen P., he did not need to ask Carmen D. where her purse was because he knew it was inside the car.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


TANGEMAN, J.

8

Charles W. Campbell, Judge

Superior Court County of Ventura

_____


        Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Timothy L. O'Hair, Deputy Attorney General, for Plaintiff and Respondent.