Filed 6/23/22  P. v. Moppins CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C092099 |
| v. | (Super. Ct. No. STKCRFE20191765) |
| NICHOLAS DEAN MOPPINS, | |
| Defendant and Appellant. | |

A jury convicted defendant Nicholas Dean Moppins of second degree robbery, assault with a deadly weapon, and a criminal threat in connection with his taking several pairs of shoes from a Macy's department store after waving a metal bar and threatening to bust things and a person's head.  Defendant admitted a prior strike conviction and the trial court sentenced him to an aggregate prison sentence of three years eight months.

Defendant now contends (1) insufficient evidence supports his convictions, (2) the trial court erred in instructing the jury with an incorrect written CALCRIM No. 875 instruction on assault with a deadly weapon, (3) the trial court should have sua sponte reopened closing argument after giving a modified jury instruction, (4) the trial court

1

should have sua sponte instructed on the lesser-included offense of attempted robbery, (5) the trial court erred in denying his request to instruct on attempted criminal threat, (6) his trial counsel rendered ineffective assistance, and (7) cumulative error requires reversal of his conviction for assault with a deadly weapon.

We conclude substantial evidence supports the convictions, defendant has not established prejudicial instructional error or ineffective assistance of counsel, and there is no cumulative error requiring reversal. We will affirm the judgment.

BACKGROUND

U.R. was working at Macy's women's shoe department when she observed defendant collecting red shoes and waving them in front of a mirror. Defendant continued picking up red shoes and moved toward the doors leading to the parking lot when U.R. offered her assistance. U.R. said defendant could not take the shoes. Defendant pulled out a jack handle[1] and walked backward toward the exit doors. He said, "I'll bust y'all shit." He held several pairs of shoes in one hand and the jack handle in his other hand. U.R. was concerned for her safety.

Officer Victor Arreola, a federal law enforcement officer, was at Macy's with his children when he noticed defendant. Officer Arreola saw U.R. approach defendant and heard defendant yelling. Officer Arreola was concerned that defendant would strike U.R. with the jack handle. Officer Arreola told U.R. to stay back.

Defendant pointed and waved the jack handle at Officer Arreola and said, "if you're a cop, I'm going to bust yo head open. You a cop. You a cop." Defendant waved the jack handle as if he was going to strike Officer Arreola with it. Officer Arreola told defendant to just leave the store. Defendant kept yelling that Officer Arreola was a "cop"

---

[1] U.R. thought the object was a crowbar. She described it as a 12- to 14-inch piece of metal. Police later recovered a Ford-brand jack handle. On appeal, the parties refer to the object in defendant's hand as a jack handle and we do the same.

2

and said, "I'm going to bust your head open." Officer Arreola continued to urge defendant to leave. He also told a store security person to let defendant leave. Officer Arreola was concerned for his safety and the safety of his children and other people.

Defendant eventually put the jack handle back in his pocket and left the store with the shoes. U.R. saw him walk toward a bus stop on the other side of the parking lot. Officer Arreola watched where defendant went. He saw defendant run toward the main street, hide the shoes at a bus stop, and walk back toward the store. Mall security personnel later recovered six to eight pairs of red women's shoes at the bus stop.

Defendant attempted to re-enter the store but was unsuccessful because security personnel had locked the doors. Mall security eventually made contact with defendant and the police arrived shortly thereafter.

A jury convicted defendant of second degree robbery against U.R. (Pen. Code, § 211[2] -- count 1.) It also convicted him of assault with a deadly weapon (§ 245, subd. (a)(1) -- count 2) and making a criminal threat (§ 422, subd. (a) -- count 3) against Officer Arreola. Defendant admitted a prior strike conviction for robbery and waived his right to a jury trial on the enhancement allegations. The trial court exercised its discretion to dismiss the penalty on the prior serious felony enhancements (§§ 1170.12, subd. (b), 667, subd. (d)) and imposed an aggregate prison sentence of three years eight months.

DISCUSSION

I

Defendant challenges the sufficiency of the evidence supporting his convictions for robbery, assault with a deadly weapon, and making a criminal threat.

---

[2] Undesignated statutory references are to the Penal Code.

3

In determining whether sufficient evidence supports a conviction, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) We do not reweigh evidence. (*Ibid.*) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.) The above standard of review also applies to insufficient evidence claims involving circumstantial evidence. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) " 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*Ibid.*) The effect of this standard of review is that a defendant challenging the sufficiency of the evidence to support his or her conviction bears a heavy burden on appeal. (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1287.)

A

Defendant argues there is insufficient evidence that he intended to permanently deprive Macy's of the shoes he took from the store.

"Robbery is 'the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to

4

permanently deprive the person of the property.' " (*People v. Jackson* (2016) 1 Cal.5th 269, 343.) Intent to permanently deprive the victim of her property may be inferred from the surrounding facts and circumstances. (*People v. Lewis* (2001) 25 Cal.4th 610, 643.) The victim of a robbery may be an agent of the owner of the property stolen, such as a store employee. (*People v. La Stelley* (1999) 72 Cal.App.4th 1396, 1401-1402.)

Substantial circumstantial evidence supports the jury's finding that defendant intended to permanently deprive U.R., a Macy's employee, of the shoes he took from the department store. When U.R. told defendant he could not take the shoes he had collected from the store, defendant held up a jack handle, told her "I'll bust y'all shit" and walked toward the store exit with the shoes in his possession. Intent to steal may be inferred when a person takes the property of another by force. (*People v. Tufunga* (1999) 21 Cal.4th 935, 943-944; see e.g., *People v. Guerra* (1985) 40 Cal.3d 377, 385.) Defendant left the store with the shoes. There was no evidence that he paid for the shoes. He also did not return the shoes, all indicating an intent to permanently deprive U.R. of possession of the shoes. (*In re Albert A.* (1996) 47 Cal.App.4th 1004, 1008.) An intent to permanently deprive the victim of her property may be inferred when the defendant unlawfully takes the property. (*People v. Morales* (1993) 19 Cal.App.4th 1383, 1391.)

B

Defendant next claims there is insufficient evidence that he used the jack handle in a manner that was likely to produce death or great bodily harm.

Defendant was convicted of violating section 245, subdivision (a)(1), which penalizes "assault upon the person of another with a deadly weapon or instrument other than a firearm." " '[A] "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." ' " (*In re B.M.* (2018) 6 Cal.5th 528, 532-533.) A few objects, such as dirks and blackjacks, are deadly weapons as a matter of law because of the ordinary use for which they are designed. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1029 (*Aguilar*).)

5

Other objects, while not deadly weapons as a matter of law, may be used in a manner likely to produce death or great bodily injury. (*Ibid.*) A metal bar is not a deadly weapon as a matter of law. (*People v. Lee* (1937) 23 Cal.App.2d 168, 170.)

Whether an object was used as a deadly weapon depends on how the defendant actually used the object and not how it could have been used. (*In re B.M., supra*, 6 Cal.5th at pp. 534-535.) Relevant considerations include the nature of the object, the manner in which the defendant used the object, and the defendant's intent and present ability to use the object. (*Aguilar, supra*, 16 Cal.4th at p. 1029; *People v. Fisher* (1965) 234 Cal.App.2d 189, 193 (*Fisher*).)

Here, the jack handle defendant used was a 12- to 14-inch piece of metal. Metal bars are certainly capable of inflicting serious bodily injury. (See e.g., *Fisher, supra*, 234 Cal.App.2d at pp. 193-194; *People v. Carr* (1933) 131 Cal.App. 644, 645.) And here the jury could reasonably conclude from the manner in which defendant used the jack handle and his words to Officer Arreola that defendant used the jack handle in a manner capable of producing and likely to produce death or great bodily injury. (See *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1167-1168; *People v. Clifton* (1957) 148 Cal.App.2d 276, 279.) In describing what defendant did with the jack handle, Officer Arreola testified that defendant waved the jack handle at Officer Arreola, as if defendant was going to strike Officer Arreola. That testimony described defendant's movements and was not speculation as defendant contends. At that time, Officer Arreola was standing in front of a mannequin and defendant stood behind the mannequin. Waving the jack handle, defendant threatened to bust Officer Arreola's head open if Officer Arreola was a cop and defendant repeatedly stated, "You a cop. You a cop." That Officer Arreola's action in urging defendant to leave the store prevented physical injury does not preclude a conviction for assault with a deadly weapon. (*In re B.M., supra*, 6 Cal.5th at p. 537.) A conviction for assault with a deadly weapon does not require actual physical contact. (*Id.* at p. 535; *People v. Brown* (2012) 210 Cal.App.4th 1, 7.)

6

C

Defendant further asserts there is insufficient evidence that Officer Arreola was in sustained fear as a result of defendant's threat.

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat -- which may be 'made verbally, in writing, or by means of an electronic communication device' -- was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).) Defendant's claim involves the fourth element.

"Sustained fear" refers to the emotion the victim experiences. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) "Fear" is "an unpleasant often strong emotion caused by anticipation or awareness of danger." (Webster's Ninth New Collegiate Dict. (1991) p. 453.) Its primary synonyms are "dread," "fright," "alarm," "panic," "terror," and "trepidation," all of which connote a "painful agitation in the presence or anticipation of danger." (*Ibid*.) "Sustained fear" refers to fear experienced for " 'a period of time that extends beyond what is momentary, fleeting, or transitory.' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 634.) No specific time is required. (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156, fn. 6 (*Allen*).) Cases have found fear to be sufficiently sustained for purposes of section 422 when the victim's fear lasted between one minute to 15 minutes. (*Fierro,* at p. 1349; *Allen,* at pp. 1153, 1155-1156.)

Defendant pointed and waved a jack handle at Officer Arreola as if he was going to strike Officer Arreola, and defendant threatened to bust Officer Arreola's head open. Officer Arreola was concerned for his own safety and the safety of his children, U.R., and others. He explained he was concerned because defendant had a weapon, Officer Arreola (a law enforcement officer) was unarmed and had no backup, his children were with him, and there were other people around. Officer Arreola told U.R. to back up. He repeatedly urged defendant to leave the store. He told security to lock the doors after defendant left and to contact the police. Defendant finally left about four or five minutes after Officer Arreola first contacted him. Believing defendant was a danger to others, Officer Arreola continued to watch defendant and later followed defendant as he walked around the mall. A jury could reasonably find from the above that Officer Arreola experienced fear for his own safety and the safety of his family as a result of defendant's threats and that his fear was more than momentary, fleeting or transitory.

## II

Defendant next contends the trial court erred in instructing the jury with an incorrect written CALCRIM No. 875 instruction that contained the word "or" rather than "and" in the definition of "deadly weapon other than a firearm."

The People properly concede that the portion of the written CALCRIM No. 875 instruction defining "deadly weapon other than a firearm" is incorrect. A deadly weapon is an object that is used in such a manner as to be capable of producing *and* likely to produce, death or great bodily injury. (*In re B.M., supra*, 6 Cal.5th at pp. 532-533.) The written CALCRIM No. 875 instruction provided to the jury incorrectly stated that a deadly weapon other than a firearm is an object that is used in such a way that it is capable of causing *or* likely to cause death or great bodily injury.

Nevertheless, the error was harmless beyond a reasonable doubt. (*People v. Wilson* (2008) 44 Cal.4th 758, 804 (*Wilson*) [assessing error in written instructions replacing "the defendant" with "a defendant" under *Chapman v. California* (1967)

8

386 U.S. 18 [17 L.Ed.2d 705]]; see *People v. Mayfield* (1997) 14 Cal.4th 668, 774, disapproved on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.)  The trial court correctly defined the phrase "deadly weapon other than a firearm" in its verbal instructions.**3**  In addition, in their closing arguments, the prosecutor and defendant's trial counsel did not refer to the definition of "deadly weapon other than a firearm."  Neither the prosecutor nor defendant's trial counsel suggested to the jury that a deadly weapon is an object that is used in such a manner as to be capable of producing or likely to produce death or great bodily injury.

In discussing the first and fourth elements of the crime of assault with a deadly weapon, defendant's trial counsel urged the jury to discredit Officer Arreola's testimony that defendant pulled the jack handle out of his pocket and waved it.  Defense counsel argued it was not reasonable for defendant to hold several pairs of shoes and wave a jack handle while backing out of the store.  He argued that defendant had no present ability to apply force with a deadly weapon because the jack handle remained in defendant's pocket during the incident.  In contrast, in addressing those elements, the prosecutor argued that defendant pulled the jack handle out of his pocket and swung it while threatening to bust Officer Arreola with it.

The jury clearly rejected the version of events advocated by defendant's trial counsel and necessarily found that defendant did something with the jack handle that would directly and probably result in the application of force upon Officer Arreola, and when defendant so acted he had the present ability to apply force to Officer Arreola. (*People v. Murray* (2008) 167 Cal.App.4th 1133, 1139; *People v. Chance* (2008) 44 Cal.4th 1164, 1167-1168 (*Chance*).)  " '[T]he gravamen [of assault] . . . is the

---

**3**  Although the written version of an instruction controls when a conflict exists between the written and verbal instructions, the jury was not informed of that rule.  (*Wilson, supra*, 44 Cal.4th at pp. 803-804.)

9

likelihood that the force applied or attempted to be applied will result in great bodily injury.' " (*People v. Williams* (2001) 26 Cal.4th 779, 787, italics omitted (*Williams*).) The present ability element of assault focuses on the defendant's ability to inflict injury on the present occasion. (*Chance,* at pp. 1171-1172.) The jury found that defendant committed assault.

Defendant's trial counsel did not claim the jack handle was not a deadly weapon. Although defense counsel argued defendant did not take the jack handle out of his pocket, the evidence showed that defendant used the jack handle in a manner that was capable of causing and likely to cause great bodily injury. Defendant waved the jack handle at Officer Arreola while repeatedly threatening to bust Officer Arreola's head open. No contrary evidence was presented. Defendant's actions and words showed he used the jack handle as a deadly weapon during the encounter with Officer Arreola.

III

Defendant also contends that after the trial court verbally gave a modified CALCRIM No. 875 instruction defining "deadly weapon other than a firearm," it should have reopened closing argument to allow counsel to argue whether the evidence showed that defendant actually used the jack handle in a manner likely to cause death or great bodily injury.

The trial court instructed the jury on the crime of assault with a deadly weapon pursuant to CALCRIM No. 875. It told the jury the definition of the phrase "deadly weapon other than a firearm" would be provided in another instruction. But after instructing the jury on the lesser offense of simple assault, the trial court said it would read the CALCRIM No. 875 instruction again because the written instruction should have included a definition for the phrase "deadly weapon other than firearm" instead of stating that the phrase would be defined in another instruction.

Counsel and the trial court discussed the definition of the phrase "deadly weapon other than firearm" at a bench conference. The definition is optional language in the

10

CALCRIM No. 875 instruction, with the pertinent bracketed portion reading: "[A deadly weapon other than a firearm is any object, instrument, or weapon [that is inherently deadly or one] that is used in such a way that it is capable of causing and likely to cause death or great bodily injury.]" In particular, the trial court and counsel discussed whether the definition should include the internal bracketed phrase "[that is inherently deadly or one]." The trial court agreed with defendant's trial counsel that the internal bracketed phrase should not be included in the definition. The trial court verbally instructed the jury as follows: "A deadly weapon other than a firearm is any object instrument or weapon that is used in such a way that it is capable of causing and likely to cause death, or great bodily injury." The trial court's verbal instruction is consistent with CALCRIM No. 875. Neither the prosecutor nor defendant's trial counsel asked to reopen closing argument.

"In any criminal case which is being tried before the court with a jury, all requests for instructions on points of law must be made to the court and all proposed instructions must be delivered to the court before commencement of argument. Before the commencement of the argument, the court, on request of counsel, must: (1) decide whether to give, refuse, or modify the proposed instructions; (2) decide which instructions shall be given in addition to those proposed, if any; and (3) advise counsel of all instructions to be given." (§ 1093.5.) "To prevent unfair prejudice, if a supplemental instruction introduces new matter for consideration by the jury, the parties should be given an opportunity to argue the theory." (*People v. Ardoin* (2011) 196 Cal.App.4th 102, 129, disapproved on another ground in *People v. Dalton* (2019) 7 Cal.5th 166, 214.) Error in not reopening closing argument "requires reversal only if, viewing the record in its entirety, a party ' "was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments." [Citation.]' [Citations.] 'The question is whether this court can "conclude that the effectiveness of

11

counsel's argument and hence of appellant's defense was not impaired by counsel's inaccurate information regarding the court's charge." [Citation.]' " (*Ardoin,* at p. 134.)

Even if the trial court erred in not reopening closing argument, and even if defendant's challenge is not forfeited due to his failure to object, defendant has not established prejudice. Defendant's trial counsel argued that the People had not proven the first and fourth elements of a section 245 violation beyond a reasonable doubt. Those elements focused on the likelihood or probability that defendant's act would result in the application of force and whether defendant was able to apply force on the present occasion. (See *Williams, supra*, 26 Cal.4th at p. 787; *Chance, supra*, 44 Cal.4th at pp. 1171-1172.) Defense counsel argued defendant could not hold shoes and wave the jack handle, and could not apply force while holding the shoes. Defendant now claims that had the trial court reopened closing argument, his trial counsel could have argued that defendant did not use the jack handle in a manner likely to produce death or bodily injury. But defendant's trial counsel had already addressed whether defendant used the jack handle in a manner that was capable of causing and likely to cause great bodily injury. Defendant fails to show that any difference in a second closing argument would have made a difference in the verdict.

IV

Defendant further argues the trial court erred in failing to sua sponte instruct on the lesser-included offense of attempted robbery. He claims there was substantial evidence from which a jury could reasonably conclude defendant only intended to temporarily deprive U.R. of the shoes.

A trial court must sua sponte instruct on an uncharged, lesser-included offense only where there is substantial evidence which, if accepted, would absolve the defendant from guilt of the greater offense but not the lesser. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) Substantial evidence does not mean any evidence no matter how weak; it refers to evidence from which a jury composed of reasonable persons could conclude

12

that the lesser offense, but not the greater, was committed. (*People v. Souza* (2012) 54 Cal.4th 90, 116.) Every lesser-included offense supported by substantial evidence must be presented to the jury. (*People v. Breverman* (1998) 19 Cal.4th 142, 155 (*Breverman*).) Attempted robbery is a lesser-included offense of robbery. (*People v. Crary* (1968) 265 Cal.App.2d 534, 540.)

The trial court did not err in this regard. There is no evidence defendant intended to temporarily deprive U.R. of possession of the shoes. Defendant left the store with the shoes by use of force or fear. He took the shoes to a bus stop that was located on the other side of the mall parking lot. The fact that stolen property is subsequently abandoned or discarded does not compel the conclusion that the defendant intended to deprive the owner of the property only temporarily. (*People v. Deleon* (1982) 138 Cal.App.3d 602, 606; *People v. Gibbs* (1970) 12 Cal.App.3d 526, 549.) There is no evidence defendant told anyone where the shoes were, took actions to ensure that the shoes would be returned to the store, or intended that the shoes be returned to the store. He did not return the shoes when he attempted to re-enter the store. Defendant's trial counsel conceded during his closing argument that defendant intended to permanently deprive the store of possession of the shoes.

V

Defendant also claims the trial court erred in denying his request to instruct on attempted criminal threat because there was substantial evidence from which a jury could reasonably conclude that Officer Arreola was not in sustained fear.

Attempted criminal threat is a lesser-included crime of making a criminal threat. (*People v. Chandler* (2014) 60 Cal.4th 508, 514-515; *Toledo, supra*, 26 Cal.4th at pp. 226, 235.) " '[I]f a defendant, . . . acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not actually cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been

13

placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat.' " (*Chandler,* at p. 515.)

The trial court denied the request by defendant's trial counsel to instruct on attempted criminal threat as a lesser-included offense of making a criminal threat, concluding that the evidence presented at the trial did not support such an instruction. We conclude that even if there was instructional error in this regard, there was no reasonable probability that defendant would have obtained a more favorable result if the trial court had instructed on attempted criminal threat. (*Breverman, supra*, 19 Cal.4th at pp. 165, 177-178 [applying *People v. Watson* (1956) 46 Cal.2d 818 harmless error test].) Officer Arreola's testimony established that he experienced sustained fear.

VI

Defendant next argues his trial counsel rendered ineffective assistance by not requesting a jury instruction on the lesser-related offense of brandishing, not seeking to reopen closing argument, and failing to object to the erroneous written CALCRIM No. 875 instruction.

To establish ineffective assistance of counsel, a defendant must prove that his or her (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*); *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674] (*Strickland*).) An ineffective assistance claim fails if the defendant makes an insufficient showing on either of those components. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland*, at p. 687.)

We review trial counsel's performance with deferential scrutiny, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions. (*Maury, supra*,

14

30 Cal.4th at p. 389; *Strickland, supra*, 466 U.S. at p. 689.)  "It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009, original italics.)

Defendant must also affirmatively prove prejudice to establish ineffective assistance.  (*People v. Mickel* (2016) 2 Cal.5th 181, 198.)  "[T]he record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  [Citation.]" (*Maury, supra*, 30 Cal.4th at p. 389.)  Defendant must show a reasonable probability of a more favorable result.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218; *Strickland, supra*, 466 U.S. at pp. 693-694.)  It is not enough for defendant to show that errors had some conceivable effect on the outcome of the case.  (*Ledesma,* at p. 217.)

Defendant contends his trial counsel rendered ineffective assistance by not requesting a jury instruction on brandishing, a lesser-related offense of assault with a deadly weapon.  As pertinent here, brandishing is the drawing or exhibiting of a deadly weapon other than a firearm in the presence of another person in a rude, angry or threatening manner or the unlawful use of a deadly weapon other than a firearm in a fight or quarrel.  (§ 417, subd. (a).)  Defendant fails to show that there was no rational tactical purpose or satisfactory explanation for defense counsel's omission.  Defendant's trial counsel argued to the jury that defendant did not pull the jack handle out of his pocket and wave it, as Officer Arreola testified.  A brandishing instruction would have been inconsistent with that theory of the case.  "The decision of how to argue to the jury after

15

the presentation of evidence is inherently tactical." (*People v. Freeman* (1994) 8 Cal.4th 450, 498.) We will not second guess counsel's tactical decision. Defendant fails to show that his trial counsel's failure to ask for an instruction on brandishing was deficient representation.

Defendant next asserts that his trial counsel was deficient in not seeking to reopen closing argument after the trial court added the definition of "deadly weapon other than a firearm" to the CALCRIM No. 875 instruction, and in not objecting to the erroneous written CALCRIM No. 875 instruction. For the reasons we explained in parts II and III of this opinion, defendant fails to establish the requisite prejudice.

VII

Defendant asserts that cumulative error requires reversal of his conviction for assault with a deadly weapon. We have not identified any prejudicial error. Nevertheless, trial court error, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error. (*People v. Hill* (1998) 17 Cal.4th 800, 844.) Considering the entire record here, however, we conclude the error in the written CALCRIM No. 875 instruction and any error in declining to reopen closing argument did not deprive defendant of a fair trial and do not require reversal of the judgment. As we have explained, the trial court correctly defined the phrase "deadly weapon other than a firearm" in its verbal instruction, there was strong evidence that defendant used the jack handle in a manner that was capable of causing and likely to cause great bodily injury, defendant's trial counsel addressed in his closing remarks whether defendant used the jack handle in a manner that was capable of causing and likely to cause great bodily injury, and the jury necessarily found that defendant did something with the jack handle that would directly and probably result in the application of force upon Officer Arreola and when defendant so acted he had the present ability to apply force to Officer Arreola.

16

DISPOSITION

The judgment is affirmed.

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
HULL, Acting P. J.

_____/S/_____
DUARTE, J.

17